**Jesse E. STURDEVANT, Petitioner,**

v.

**Dr. R. O. SETTLE, Warden, Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.**

No. 12734.

United State District Court
W. D. Missouri, W. D.

March 15, 1961.

Jesse E. Sturdevant, pro se.

Edward L. Scheufler, U. S. Atty., Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., for respondent.

RIDGE, Chief Judge.

Petitioner is presently confined in the Medical Center for Federal Prisoners, at Springfield, Missouri, under commitment entered pursuant to Sections 4246, 4247 and 4248, Title 18 U.S.C.A. By supplemental response filed February 10, 1961, to order of this Court dated January 30, 1961, it appears that the Neuropsychiatric Staff of the Medical Center:

> " * * * was of the opinion that this patient's mental illness continues to interfere with his ability to understand the nature of the legal proceedings pending against him and with his being able to help counsel in his defense. The Neuropsychiatric Staff was also of the opinion that the patient is probably dangerous to himself and others. The Staff is of the opinion that the patient's prognosis for recovery in the foreseeable future to a degree which would permit him to consult with his lawyer with rational understanding and to have a rational as well as factual understanding of the proceedings against him, is likewise poor." (Special Progress Report 10/5/60.)

The instant habeas corpus proceeding has been pending before this Court since March 7, 1960. It is not, so far as the Judges in this District are concerned with habeas corpus proceeding, "a rare case where exceptional circumstances * * * are shown to exist.". Hawk v. Olson, 8 Cir., 130 F.2d 910, 913. It does present difficult constitutional, procedural, and policy problems, frequently and recurringly presented to the Judges of this Court, relating to mentally ill persons merely charged with a federal offense, but never having been convicted thereof, who are committed to the Medical Center for Federal Prisoners pursuant to Chapter 313, Title 18 U.S.C.A.

### The Facts

On November 22, 1957, separate indictments were returned against petitioner in the United States District Court

for the District of Wyoming, charging him with a violation of 18 U.S.C.A. § 201 (tender of bribe) and 18 U.S.C.A. § 876 (mailing a threatening communication).

On December 17, 1957, he was arraigned on such charges, entered pleas of not guilty, and was released on total bond of $8,000. On April 18, 1958, on motion of the United States Attorney, made pursuant to the provisions of 18 U.S.C.A. § 4244, the Court ordered a mental examination for petitioner, to be conducted at the Veterans Administration Hospital, at Sheridan, Wyoming.

The report of the mental examination which was submitted to the Court indicated that petitioner was mentally incompetent. On June 3, 1958, the Court conducted a hearing, pursuant to 18 U.S.C.A. § 4244, to determine petitioner's mental competency to stand trial on the pending charges, at which hearing petitioner was represented by counsel. After hearing the evidence adduced, the Court, on June 5, 1958, filed the following Findings of Fact and Conclusions of Law:

"This matter came on regularly for hearing before the Court on June 3, 1958, upon due notice thereof, for the purpose of determining the mental competency of the Defendant under the provisions of Title 18 USC Section 4244, the United States of America appearing and being represented by John F. Raper, Jr., United States Attorney for the District of Wyoming, and the Defendant appearing in person and being represented by William S. Bon, his counsel, and the Court after hearing the testimony of Dr. Robert V. Edwards, M. D., a qualified Psychiatrist, and the testimony of I. J. Matthews, Murel M. Starr, Harold Phillips and Louis D. Wright, and having examined all the exhibits and after hearing the testimony of the Defendant's wife and having considered the matter and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

"1. That the Defendant is presently insane, with a diagnosis of Paranoid Schizophrenia.

"2. That the Defendant is so mentally incompetent as to be unable to understand the proceedings against him.

"3. That the Defendant is so mentally incompetent as to be unable to properly assist in his own defense.

"4. That the Defendant is *temporarily* insane and incompetent. (Emp. added.)

"5. That the Defendant should be committed to the custody of the Attorney General until mental competency to stand trial is restored or the charges against him are otherwise disposed of according to law."

On the same day, the Court entered an order pursuant to 18 U.S.C.A. § 4246, committing petitioner "to the custody of the Attorney General until his competency to stand trial is restored or the charges pending against him are otherwise legally disposed of according to law." Pursuant to that order, petitioner was incarcerated in the Medical Center for Federal Prisoners, at Springfield, Missouri, on or about June 20, 1958.

■■■ Since then, petitioner, *pro se*, has commenced three habeas corpus proceedings in this United States District Court. From the records made in such proceedings, Cases Nos. 12089, 12184 and 12534, (judicial notice of which is here taken) petitioner has sought, tersely stated, to be returned to the District of Wyoming to stand trial on the charges there made against him, contending that he was "physically and mentally competent"; that he understood "the nature of the charges against me and wish to return to Wyoming for trial." In Case No. 12089 and Case No. 12534, supra, show cause orders were duly entered. From the return to the show cause order in the first numbered case and exhibits attached thereto, it appeared from the "Report of the Neuro-

psychiatric Examination" made of petitioner on July 28, 1958, by a Staff Psychiatrist of the Medical Center, that petitioner's then mental illness was diagnosed as follows:

"Schizophrenic reaction, paranoid type, characterised by marked hostility, guardedness and defensiveness, over-alertness, suspiciousness, fixed ideas, delusions of persecutory type, grossly impaired judgment, use of projection and denial, negativism, litigiousness, some degree of ideational concretism, underlying depression."

The recommendation and prognosis of the Staff Psychiatrists who made that report was that the petitioner should be given specified treatment and that "the prognosis in cases such as this is poor."

Subsequently, on October 9, 1958, the Psychiatric Staff of the Medical Center, after interview of petitioner and review of his record in that institution, expressed itself thus:

"The Staff is of the opinion this man is unable to understand the proceedings against him or properly assist in his own defense."

In that report, the Psychiatric Staff stated that it was in agreement with the recommendations and diagnosis of the Staff Psychiatrist to the effect that the "diagnosis of paranoia schizophrenia as indicated in the report of the psychiatric examination" was proper.

Habeas corpus was denied in Case No. 12089, on October 17, 1958, by Judge Richard M. Duncan, of this Court, without hearing, because from the pleadings and psychiatric reports it was revealed "the petitioner has not been confined in the institution a sufficient length of time to justify the issuance of a

writ of habeas corpus; at least until another examination has been made subsequent to the first of the year 1959, at which time, if the petitioner feels that he should be released, he may again file his petition for writ of habeas corpus."[1] On appeal, the ruling so made was sustained by the Eighth Circuit Court of Appeals. 264 F.2d 827. The mandate of the Eighth Circuit Court of Appeals in that case, is dated November 17, 1958 and was filed in this Court on November 18, 1958.

While the appeal supra was pending in the Eighth Circuit Court of Appeals, petitioner, *pro se*, on September 23, 1959, filed another handwritten petition for writ of habeas corpus in this Court. (Case No. 12534.) In that petition, he alleged, among other things, that he was imprisoned in the Medical Center for Federal Prisoners, at Springfield, Missouri, "under the color of Section 4246, Title 18, U.S.Code"; that he had been so imprisoned since June 20, 1958; "that he is, and always has been, in actuality, sane * * *."; "that he is innocent per se, of any crime * * *; that there is a long and complicated background to his predicament, which petitioner cannot present in this petition, because of the conditions of his imprisonment * * *; that he can present overwhelming evidence that he is competent to be tried * * *; that he was exonerated of insanity by a jury in his home town fifteen days before the United States made (sic) him insane."[2] The prayer of that petition was: "That this Court conduct a hearing so that petitioner may present what evidence is lacking in the instant petition; that petitioner may be returned to his committing court for either trial, commitment under Section 4247, Title 18, U.S.Code, or commit-

---

1. Under Sections 4244 and 4245, Title 18 U.S.C.A., the reports of the Medical Center are admissible in evidence and are "prima facie evidence of the facts and conclusions certified therein," and may be so admitted and considered in a Section 4246 proceeding resulting in a Section 4248 commitment.

2. The complaint also contained some bizzare, absurd, and ludicrous statements, of a conclusionary nature, usually found in habeas corpus petitions, not only by those mentally ill, but by prisoners generally, who, by reason of confinement, are for the most part compelled to present same *pro se*.

ment to the insane asylum in the State of his residence."

By return of respondent filed to the show cause order entered in that action, it was made to appear that, in the opinion of the Neuropsychiatric Staff of the Medical Center, petitioner continued to be:

"* * * not able to understand the nature of the proceedings against him or assist counsel in his defense. It is also felt that the patient has a poor prognosis concerning recovery of competence to stand trial. The Staff felt that this patient probably presents a danger to society and probably is especially dangerous to the United States Government, its officers, property and interests."

The return of respondent in that action also disclosed, among other things, "that an order had been entered by the United States District Court for the District of Wyoming, directing that a hearing be held on December 6, 1959, in that Court for the purpose of determining whether the conditions specified in Section 4247, Title 18 U.S.C.A. exists in regard to the petitioner's "mental competency and his further incarceration in the Medical Center as a result of the charges pending against him." As a consequence, it was then made to appear, "provision has been previously made for petitioner to be returned to his committing Court for an additional hearing under Section 4247, supra, so that his further incarceration under the charge pending against him may be legally determined."

In light of the foregoing, it then appearing that petitioner was in the legal custody of respondent pursuant to Section 4244, supra, and that he would be returned to his committing court for another hearing under Sections 4246, 4247 and 4248, Title 18 U.S.C.A., the application for writ of habeas corpus made in that action was denied.

Petitioner was returned to his committing court. A hearing was held in that court, "on December 16, 1959, for the purpose of determining whether the conditions specified under Title 18, U.S. C.A., Section 4247 presently exist." On December 21, 1960, the United States District Court for the District of Wyoming entered the following Findings of Fact and Conclusions of Law:

"This matter came on regularly for hearing before the Court on December 16, 1959, for the purpose of determining whether the conditions specified under Title 18 USC Section 4247 presently exist, the United States of America appearing and being represented by John F. Raper, Jr., United States Attorney for the District of Wyoming, the Defendant appearing in person and being represented by Tosh Suyomatsu, his Court appointed counsel and the Court after hearing the testimony of I. J. Matthews, Harold Phillips, Dr. Louis Moreau, M.D., a qualified psychiatrist and Dr. Richard A. Stamm, M.D., a qualified psychiatrist, and having reviewed the proceedings heretofore had respecting the mental competency of the Defendant on June 3, 1958, including the exhibits then introduced into evidence and after having examined the exhibits introduced herein, observing the behavior of Defendant, hearing the testimony of Defendant's son, and having considered the matter and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

"1. The Defendant by letter dated October 11, 1957 threatened to kill I. J. Matthews, then a United States Government employee.

"2. By means of communication dated October 12, 1957 from defendant to I. J. Matthews, then an employee of the Bureau of Reclamation, Department of the Interior, United States of America, Defendant threatened the safety of said Officer of the United States.

"3. That the Defendant is presently insane, with a diagnosis of Schizophrenic Reaction, Paranoid Type characterized by marked hostility, defensiveness, over-alertness, suspiciousness, fixed ideas, delusions of persecutory type, gross impairment of judgment, negativism and litigiousness.

"4. The Defendant is so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense or to stand trial.

"5. The Defendant has shown no improvement from the time of his commitment on June 3, 1958 and prognosis is guarded.

"6. If released, the Defendant will probably endanger the safety of the officers, the property or other interests of the United States, within the meaning of Title 18 USC Section 4247.

"7. Suitable arrangements for the custody and care of the Defendant other than by custody of the Attorney General of the United States or his authorized representative are presently not available.

"8. The Court's Findings of Fact and Conclusions of Law dated June 5, 1958 are hereby confirmed.

"9. This proceeding and these findings are authorized by the last sentence of Title 18 USC Section 4246 and the Court has jurisdiction to make such determinations.

"10. There is presently an Indictment and charge in this numbered criminal case outstanding and undisposed of.

"11. The Defendant should be retained in the custody and under the control of the Attorney General of the United States until the charges herein are disposed of *and* suitable arrangements for the custody and care of the Defendant are otherwise available."

On the same date, the following "Order Continuing Commitment of Defendant" was entered in "No. 6866–Criminal" U.S. D.C.Dist.Wyo.[3]

"Re. United States v. Jesse E. Sturdevant
Criminal No. 5847

"Dear Mr. Sturdevant:

"The Court received your recent motion to dismiss and referred it to this office for examination. Because of your present incarceration in the Medical Center, Springfield, Missouri, we requested that the indictment transferred here from the District of Wyoming be dismissed. On July 6, 1959, our Court allowed this motion. For your information we are enclosing a copy of our motion to dismiss and the order filed by the Court."

There is also of record in this case a copy of letter from Mr. Edward F. Casey to Mr. Patrick E. Hartigan, Counsel appointed by this Court to represent petitioner in the instant habeas corpus action, reading as follows:

"Re: United States v. Jesse E. Sturdevant
Criminal No. 5847, Cr. 1680.

"In reference to your inquiry about Jesse E. Sturdevant, the indictment pending in this District was dismissed at the Government's request on July 6, 1959. The instant indictment was originally re-

---

3. It is here noted that the findings of fact, *supra*, and the order following were only entered of record in captioned case "No. 6866–Criminal" U.S.D.C.Wyo., and that the charge made against petitioner in that action was for "tender of bribe" in violation of 18 U.S.C.A. § 201, punishment for which is fixed at a "fine not more than three times the amount of money or value of such thing, or imprisonment not more than three (3) years or both."

Seemingly, the reason for that situation is this: It appears that the indictment filed against petitioner in Case No. 6866 U.S.D.C.Wyo., charging violation of 18 U.S.C.A. § 876, (extortion) was transferred pursuant to Rule 22, F.R.Cr.P., 18 U.S.C.A. to the U.S.D.C.S.D.Ill., for disposition, prior to the time of the hearing held in the U.S.D.C.Wyo. on Dec. 16, 1959, and that such indictment was dismissed by the U.S.D.C.S.D.Ill. on Sept. 21, 1959.

Petitioner's Ex. 11 in the case at bar is a letter addressed to petitioner when he was first confined in the Medical Center, dated Sept. 21, 1959, from Edward F. Casey, Ass't U .S. Att'y, S.D. Ill., reading as follows:

"The Court having filed its Findings of Fact and Conclusions of Law herein, it is hereby ordered that the commitment of Defendant Jesse E. Sturdevant, also known as J. E. Sturdevant, to the custody of the Attorney General, be and is hereby continued, until said Defendant shall be mentally competent to stand trial or until the pending charges against him are disposed of according to law.

"It is further hereby ordered that this further commitment shall be governed by Title 18 USC Section 4248, in that the Court has determined that the conditions specified in Title 18 USC Section 4247 exist."

As a consequence of the last-mentioned order, petitioner was returned to the Medical Center for Federal Prisoners, at Springfield, Missouri, and is presently confined and detained therein, pursuant to the last-above order.

From the record in this habeas corpus action, it appears that on December 18, 1951, petitioner, *pro se*, filed "Notice of Appeal" and motion to perfect same *in forma pauperis* to the Tenth Circuit Court of Appeals, from the order of commitment last-above-mentioned. Petitioner's committing court denied such leave on similar motion. The Tenth Circuit Court of Appeals, appointed counsel to represent petitioner in respect to the above application, (Pet. Ex. 7) who, in due course, filed "Brief and Memorandum in Support of Motion for Leave to Proceed in Forma Pauperis." (Ex. attached Supp. Resp. to Order to Show Cause, filed July 20, 1960.) On June 7, 1960, the Clerk of the Tenth Circuit Court of Appeals wrote the following letter (copy of which is attached to Response supra) to petitioner:

"This matter came on for hearing on your motion for leave to appeal in forma pauperis and the memorandum of Mr. William R. Buge, in support of your motion. Since there is no final judgment in the case, the Court today entered an order denying leave to appeal in forma pauperis, for the reason there is no appealable order."

Thereafter, petitioner, *pro se*, filed "Motion for Leave to Proceed in Forma Pauperis and Petition for Writ of Certiorari," in the Supreme Court of the United States. "Brief for the United States in Opposition to the Granting of the Petition for Writ of Certiorari" was filed on behalf of the Government in the Supreme Court. Certiorari was denied on March 6, 1961, Sturdevant v. United States, 81 S.Ct. 749.

Such is a part of the background history leading up to petitioner's incarceration in the Medical Center. What is hereafter stated relates to procedure and action taken by this Court subsequent to petitioner's commitment to the Medical Center on December 21, 1959.

On January 4, 1960, petitioner addressed a letter to this Court, requesting that it be considered as a petition for writ of habeas corpus. In that document he stated: "I further pray that the Court get the information it needs regarding the previous history of my case from the pleadings in Civil Action No. 12534 in this Court." By letter dated January 7, 1960, petitioner forwarded to this Court a copy of the documents on which his letter of January 4th was grounded, and requested that the same be made a part of his previous letter.

turned in the District of Wyoming. It involved the mailing of a threatening letter in violation of 18 USC 876. After Mr. Sturdevant's commitment to the Federal Medical Center, Springfield, Missouri, by the District Court of Wyoming, the instant indictment was transferred here pursuant to Mr. Sturdevant's request. The letter was mailed in this District and received in Wyoming, consequently, there was double venue. In addition to the instant indictment a second indictment charging Mr. Sturdevant with bribery was also returned in the District of Wyoming; the second indictment was never transferred here, and, to our knowledge, is still pending in Wyoming."

On January 12, 1960, petitioner forwarded to this Court another letter containing an affidavit of poverty and "a copy of the order continuing commitment of defendant" which he states that he did not receive until January 9, 1960. In that letter he further stated:

"The issue I now present is this: I can demonstrate conclusively in this Court that:

"1. I am abundantly competent to be tried under the McNaghten Rule; and/or

"2. There is no valid evidence that I represent a danger to the * * * United States; and/or

"3. I am entitled to all the custody and care due a resident of the State of Wyoming; and/or

"4. I am innocent per se of any crime; and/or

"5. I am legally sane in Wyoming. However, my question is—does the language of the enclosed order still prevent my release—not from custody but—from the Springfield prison—the point being that if I am imprisoned on other than a convict status I can arrange for help that will soon free me.

"If, despite the above, I cannot be released from this prison, I see no hope of ever being anything but a convict as:

"1. I will never commit myself to an insane asylum or admit insanity;

"2. It is impossible, unless granted a jury trial, for a poor person to prove that he is sane or that he is competent to be tried under the Durham Rule."

Treating the above letters as a petition for writ of habeas corpus, as we are admonished to do, (Rice v. Olson, 1945, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367) this Court entered a show cause order on March 7, 1960, directed to respondent in the instant case, (see memorandum filed of even date) by which respondent was "directed to show cause * * * why a petition for writ of habeas corpus should not be granted herein, and in his response thereto particularly inform this Court as to the present mental status of petitioner, the prognosis thereof, and when petitioner will again be examined by the Psychiatric Staff of the Medical Center." March 16, 1960, respondent filed response thereto, in which, among other things, it was made to appear that petitioner was scheduled for examination by the Psychiatric Staff of the Medical Center to be held on March 24, 1960. By leave of court, respondent, on April 1, 1960, filed a supplemental response to order to show cause, in which it was stated: "The following recommendations were agreed upon by the Neuropsychiatric Staff upon their examination of petitioner, as reflected in the above report:

"Recommendations: Although some improvement has been noted in the patient such as increased accessibility and cooperativeness, he continues to be preoccupied with hyper-suspicious paranoid delusional ideas. He is more depressed than he has been heretofore. Because the patient may be older than his stated age when he first came to the institution, the Staff considered a diagnosis of involutional psychosis. The possibility of ECT as being a valuable therapeutic tool with him was considered. The Staff opined that this patient's mental illness continues to interfere with his ability to understand the nature of the legal proceedings pending against him and his being able to assist counsel in his defense."

On May 12, 1960, this Court appointed counsel to represent petitioner in this habeas corpus proceeding. A hearing was held thereon on May 27, 1960. At that hearing it was first made to appear before this Court that petitioner then had pending before the Tenth Circuit Court of Appeals, an appeal from the order continuing his commitment in the Medical Center, as entered in the United States District Court for the District

of Wyoming on December 21, 1959; and that certiorari had been sought in the Supreme Court of the United States from the order as entered by the Tenth Circuit Court of Appeals hereinbefore mentioned, denying petitioner right to appeal *in forma pauperis*. As a consequence of the pendency of such certiorari proceedings, ruling on defendant's petition for writ of habeas corpus was deferred.[4]

On January 21, 1961, petitioner forwarded to this Court a letter by which it was made to appear therefrom and from exhibits attached thereto, that the State Board of Charities and Reform of the State of Wyoming had now agreed to accept petitioner for commitment in the Wyoming State Hospital as a patient, if petitioner is returned to the State of Wyoming for care and hospitalization, at no expense to the State of Wyoming. Upon receipt thereof, an order was directed to respondent to show cause why petitioner should not be released from confinement in the Medical Center for Federal Prisoners, at Springfield, Missouri, to the Board of Charities and Reform of the State of Wyoming. February 10, 1961, by supplemental response to that show cause order, petitioner's assertion to the effect that the authorities of the State of Wyoming State Hospital, at Evanston, Wyoming, have agreed to accept petitioner as a patient in that hospital, was confirmed.

Of course, this presents a matter of policy to be effectuated between the Director of the Bureau of Prisons and the authorities of the State of Wyoming. At the instance of respondent, the Court deferred further hearing and ruling in respect to petitioner's petition for writ of habeas corpus, as supplemented, so that administrative steps might be taken to establish suitable arrangements for the return of petitioner to the State of Wyoming and his custody and care by State facilities within the jurisdiction of that State; the last such request being made to this Court under date of February 16, 1961.

[redacted] March 6, 1961, petitioner, by letter to this Court, protested any further delay in effecting his return to the State of Wyoming and that "the United States be given no more time," to formulate administrative policy to that purpose. He states that "I have been in the Springfield Prison for thirty-three and one-half months and during every day of that period suitable facilities for my imprisonment have actually existed in the State of my residence." Total proof of the latter statement is not established by the record in this Court. He has been confined by the United States Government for 33 months, although he has never been convicted of a crime. Such period of confinement is in excess of any legal punishment that might have been meted out to petitioner had he been convicted on the only federal charge now pending against him.

Mr. Justice Whittaker, at the time he was a United States District Judge for the Western District of Missouri, when confronted with a comparable habeas corpus proceeding in the Case of Wright v. Steele, 125 F.Supp. 1, 3, this Court, said:

> "Section 4244 and 4246, Title 18 U.S.C., obviously were enacted as a shield to protect a person, temporarily mentally incompetent, from having to stand trial, upon charges which if committed by a sane person would constitute a federal offense, until such accused has recovered from his temporary incompetence sufficiently to understand the charges against him and to intel-

4. A transcript of the proceedings as made at the hearing before this Court on May 27, 1960, is on file as a part of the record in this cause. It is not deemed necessary that an analysis or compendium of the testimony adduced at such hearing be presently made. To the inquisitive, such transcript points up the uncertainty of a diagnosis, from legal standpoints, of "mental illness" made according to psychiatric standards; as differentiated from "mental incompetency", the standard fixed by the Congress in Chapter 313, Title 18 U.S.C.A., a subject matter that recurringly plagues this District Court in habeas corpus proceedings such as the instant one.

ligently assist in his own defense, and care must be taken to see that the period consumed in determining his competence or incompetence to stand trial upon those charges does not approximate, and certainly not exceed, the probable sentence—less 'good' time—he would have received and served had he pleaded, or been found, guilty as charged * * *.''

To the same effect is the memorandum opinion of Mr. Justice Whittaker in Hopkins v. Steele, Warden, Case No. 10391 of this Court.

In Greenwood v. United States, 8 Cir., 1955, 219 F.2d 376, 387, the Eighth Circuit Court of Appeals, *en banc,* speaking through Judge John B. Sanborn, considered the constitutional, procedural, social and administrative problems which arise when Federal Courts are called upon to treat with insane persons charged with crime, but who have not been legally convicted thereof. The gist of Judge Sanborn's scholarly opinion in the Greenwood case, as I understand it, is that the power of the Federal Government to confine mentally incompetent persons, within due process of law, who are merely charged with the commission of a federal crime, is not prohibited, but is constitutionally and formally limited to a condition "when that appears to be the only or the best way available for providing for their care and custody" and the state of their residence will not accept the relation of *parens patriae* toward them.

In the case at bar authorities of the State of Wyoming have now stated they will accept that relation to petitioner. The facts hereinabove related preponderately establish that petitioner is, and probably was at the time of the commission of the federal offense with which he is charged, mentally ill, and presumptively permanently so. As a consequence, the only rational conclusion is "that federal authority to prosecute has now been irretrievably frustrated." Greenwood v. United States, 350 U.S. 366, 375, 76 S.Ct. 410, 415, 100 L.Ed. 412.

The Government in this case can no longer constitutionally say to petitioner: "Wait. You can't raise (your right to trial in the Federal Courts until) you have recovered. In the meantime, we'll detain you with the criminally insane, where you will have to live under a cloud of accusation from which we will not allow you to exculpate yourself." (Par. added.) (See comment on pretrial commitment of criminal defendants, and constitutional questions proffered by Caleb Foote, Univ.Penn.Law Review, Vol. 108, No. 6, April, 1960, when a situation as here present is made to appear.) The constitutional right of the Federal Government to further detain custody of the defendant-petitioner in this case has run its course.

Respondent is directed to, within five days from this date, transport, or turn custody of petitioner over to the United States Marshal of this District for transportation and delivery of the person of petitioner, to the authorities of the Wyoming Hospital, Evanston, Wyoming.

It is so ordered.