**UNITED STATES of America**

*v.*

**Michael GOROBETZ.**

**Cr. No. 70-57.**

United States District Court
D. New Jersey.

Nov. 27, 1957.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Jerome D. Schwitzer, Asst. U. S. Atty., Asbury Park, N. J., for the United States.

William Rosenberg, of Blumberg & Rosenberg, Manville, N. J., for Michael Gorobetz.

HARTSHORNE, District Judge.

In a criminal information filed February 18, 1957, defendant was charged in two counts, under 26 U.S.C. § 145(a), with wilfully and knowingly failing to file income tax returns with the Collector of Internal Revenue of the United States for the calendar years 1953 and 1954. On May 6, 1957, defendant, in the presence of counsel, pleaded guilty in open court to both such counts, and on June 7, 1957, received a suspended sentence of one year imprisonment on each of the two counts, to run consecutively, and was placed on probation for a period of five years, together with a fine of $5,000 on each count. Defendant was also ordered to adjust all taxes, penalties, interest and costs, with the Bureau of Internal Revenue as a condition of probation.

During the course of the above proceedings, Gorobetz, a Russian, who spoke broken English, had acted somewhat peculiarly. When he was called on at home by the Probation Officer during the presentence examination, he waved a gun, apparently unloaded, at the officer. After he was placed on probation he refused to sign the probation conditions as required, failed to report to the Probation Officer, and failed to pay the fine or adjust his taxes.

Thereupon the Court ordered that defendant be arrested for these probation violations and that a hearing be had thereon. At such hearing the question arose whether defendant was "presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him," 18 U.S.C., Crim.Proc., § 4244, so the Court ordered that defendant be examined mentally under that statute. This was done, but the reports from the medical authorities thereon did not sufficiently clarify his mental condition not only at that time, but also at the time of his sentence, his plea, and at the time of his commission of the offenses charged against him, i. e., in 1954 and 1955. Accordingly, on motion of the Government, the defendant was ordered in October, 1957, to be examined further, with special regard to these pe-

riods, and he was again committed accordingly to the United States Public Health Hospital at Staten Island for three weeks to that end. This was accomplished and thereafter on November 19, 1957, a hearing was held in that regard.

At this hearing testimony was given by three doctors attached to the hospital, a psychiatrist, a psychologist, the Deputy Chief of that entire service, and by Gorobetz himself, his wife and his foster son, as well as his counsel. From the above it clearly appears that not only at the time of Gorobetz' alleged violation of probation, but at the preceding times of his sentence and of his entry of plea of guilty, he was so mentally incompetent as not to be able to understand the legal proceedings against him, to properly assist in his own defense, or to understand his obligations to the Court while on probation. This was the unanimous opinion not only of the three doctors whose testimony was taken at the hearing, but was stated by them to be the unanimous opinion of the entire neuropsychiatric staff of the hospital, some eight in number. It was their conclusion that he was a psychotic, with organic brain damage, that he had an exceedingly low level of mental ability, namely, between the sixth and the eighth years, and that his make-up was such that the pressure on him resulting from the above legal proceedings, when added to his organic brain damage, had resulted in an actual psychosis. They concluded also that this in fact was due to the fact that he was a definite alcoholic, whose difficulties with the Government for the last couple of years had caused him to imbibe much more than previously, thus increasing the deterioration of his condition during that period. Of course, these medical witnesses had their attention called by the Court to the fact that during much of this period and earlier Gorobetz, instead of running a small store, his earlier occupation, had been frequenting a local stockbroker's office and speculating in stocks. But this in nowise changed their above medical opinion. They called at-

tention to the fact that this action of Gorobetz simply amounted to his accepting recommendations from others as to taking action, the intricacies of which were carried out by third parties. So this took but small mental capacity on his part, particularly when he was operating on a generally rising market.

However, as to Gorobetz' incompetence at the time of the commission of the offenses set forth in the information, to wit, from March 15, 1954, to April 15, 1955, when he should have finally filed his income tax returns for the criminal information years of 1953 and 1954, the testimony is by no means clear. The Government's psychiatrist, Dr. Grunbaum, opined, though with some hesitation, that he was not incompetent at that time. This was on the theory that his incompetence was due primarily to two factors, first, Gorobetz' organic brain damage, second, his personal stress created by the filing of the criminal information against him. So, since the latter factor was lacking until early 1957, and since the lay testimony indicated that Gorobetz was in much better health and more stable previous to 1957, the Government's psychiatrist concluded that Gorobetz was not insane, but was mentally competent, in 1954 and 1955. This psychiatrist's testimony was corroborated by the Government's psychologist. But the Deputy Chief of that department at the hospital, while he did not expressly disagree with the above testimony, added that he did not feel the facts sufficed for him to reach a conclusion either way in that particular regard.

However, since the defense offered no medical testimony, and no lay testimony disproving any of the above, this Court must now hold that Gorobetz was not insane at the time of the alleged offenses, i. e., in 1954 and 1955, when he should have filed his returns for the tax years 1953 and 1954. With these informations thus outstanding against the accused, but with the accused mentally incompetent at present to stand trial, the statute provides:

"* * * The court *may* commit the accused to the custody of the Attorney General, or his authorized representative, until the accused shall be mentally competent to stand trial, or until the pending charges against him are disposed of according to law * * *" (italics added)

The remaining questions thus are, how shall these pending charges be disposed of, and what shall be done with the accused pending their disposition? The first is a question to be answered by the Department of Justice. As to the second, it was the definite finding of all the doctors that Gorobetz "would not constitute a menace to himself or others if discharged in his own custody" now. The statute, Sec. 4246, supra, provides that upon the determination that the accused is mentally incompetent "the court *may* commit the accused to the custody of the Attorney General." It is further provided in Sec. 4248 of the same statute that "whenever a person shall be committed * * * his commitment shall run * * * *until* the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property or other interests of the United States." (Italics added.) These statutes thus indicate the Congressional intent to be, in the first place, that the court is vested with the exercise of a sound discretion as to whether or not under such circumstances to commit the accused to actual custody, and further, that he is to be committed to such custody only "until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property or other interests of the United States." Since all the testimony, both lay and medical, now indicates that such is Gorobetz' present condition, it would seem to accord with the Congressional intent that, pending further action by the Government on the present charges, Gorobetz should be released from custody. This is, furthermore, quite in accord with the recent

decision of our highest court in Greenwood v. U. S., 1955, 350 U.S. 366, 76 S. Ct. 410, 415, 100 L.Ed. 412 and the cases there cited, in their allusion to the fact that this power of the Federal courts to handle insane offenders against the Federal law is simply "auxiliary to incontestable national power * * * to prosecute for federal offenses * * *" to their conclusion, i. e., the general power of this Court to deal justly with defendants pending their prosecution.

An order may be entered accordingly.