James E. CRAFT, Petitioner,

v.

Dr. R. O. SETTLE, Warden, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

No. 13819–1.

United States District Court
W. D. Missouri, W. D.

June 1, 1962.

Loeb Granoff, Kansas City, Mo. (court appointed), for petitioner.

Joseph P. Teasdale, Asst. U. S. Atty., Kansas City, Mo., for respondent.

JOHN W. OLIVER, District Judge.

This case involves the important question of whether a prisoner removed to the Springfield Medical Center from the Reformatory at Chillicothe, Ohio, pursuant to Section 4241, Title 18 U.S.C., is entitled to a judicial review, by habeas corpus or otherwise, of the administrative judgment that he "is still insane", within the meaning of Section 4243, Title 18 U.S.C., and therefore subject to being "delivered into the custody of the proper authorities" of the State of the

prisoner's residence after the expiration of his maximum sentence.[1]

Judicial inquiry into this matter was prompted by a letter from petitioner. It stated in part:

"I am writing to you under the provisions of Title 18, sections 42–47 and 42–48, and it is requested that you consider this letter as a petition to the Court.

"On June 6, 1958, when I was 18 years old and a first offender, I was sentenced to four years on a Dyer Act charge by Judge Harry E. Watkins, Chief Judge of the Northern District of West Virginia. I was sent to the Federal Institution at Chillicothe where I earned meritorious good time and even a parole in 1960. During the week that I was to leave on parole, I was certified incompetent and transferred to the Medical Center. My mandatory release date was July 4, 1961, but I was kept on certified status and told that I had to serve out my sentence with no statutory or meritorious good time allowed. At that time I had no money to hire a lawyer and did not know that I could petition the court. This four-year sentence will expire June 5, 1962.

"On April 5, 1962, I was called before a neuro-psychiatric Staff meeting and told that I would not be released, but would be committed to a state insane asylum on June 5.

\*     \*     \*     \*     \*     \*

"It is urgently requested that you overlook my ignorance of legal form and procedure and accept this letter as a petition for a sanity hearing in your court, requiring the officials here to show cause why I should not be released on June 5, 1962."

The response to our order to show cause confirmed that petitioner was given a four year sentence on a plea of guilty for a violation of the Dyer Act (Title 18 U.S.C. § 2312) by the United States District Court for the Southern District of West Virginia on June 6, 1958; that he was committed to the Chillicothe Reformatory; and that on April 6, 1960 petitioner was ordered removed to the Springfield Medical Center by the Attorney General "pending further orders \* \* \* or until the maximum sentence, without credit for good time or commutation, shall have been served".

Petitioner's sentence is due to expire on June 5, 1962.

The response further shows that respondent intends to deliver petitioner into the custody of the Huntington State Hospital, Huntington, West Virginia, the state of his residence. It is respondent's judgment that "it would be to the best interest of the petitioner, as well as society, if petitioner is transferred to the appropriate state institution for further treatment upon his release from the United States Medical Center at Springfield".

Neither respondent's answer to our initial order to show cause, nor the exhibits attached thereto revealed the source of the power exercised to transfer petitioner to the Medical Center or under which respondent intended to deliver custody of petitioner to the West Virginia authorities.[2]

---

1. This Court has frequently passed on Sections 4244–4248, Title 18 U.S.C. questions (See Martin v. Settle (W.D.Mo.) 192 F.Supp. 156 (1961) and cases cited on page 158 of that case) but questions arising under Sections 4241–4243, Title 18 U.S.C. have not received like attention in the reported decisions of this or any other court.

2. Administrative Form No. 5 under which petitioner was ordered to be removed to the Medical Center merely recites that action was taken "in accordance with existing law". No specific statutory authority is anywhere cited on that form. The attention of the Court was directed to Section 4243 in respondent's answer but there was no direct allegation that respondent intended to act under that section rather than Section 4248 of Title 18 U.S.C.

This Court therefore issued a second order requiring, among other things, that counsel for petitioner (the Court appointed Loeb Granoff, an able member of the Bar of this Court, to represent petitioner in that order) and counsel for the respondent to advise the Court in regard to "(a) the express Federal statutes under which petitioner was transferred from Chillicothe to Springfield and the authority under which he is presently confined; (b) the express statute under which the Government seeks to transfer petitioner to the hospital in Huntington, West Virginia; (c) the laws of West Virginia relating to admission of patients into that hospital, with particular inquiry as to whether a judicial hearing is required either by the law of that State or by the Constitution of the United States, and (d) any other matters which counsel believe should be called to the Court's attention".

In response to that second order, respondent made clear that petitioner had been transferred to Springfield Medical Center pursuant to Section 4241; that respondent had contacted the West Virginia authorities pursuant to the duty imposed upon him by Section 4243; that it is respondent's judgment that petitioner is still insane within the meaning of Section 4243; and that unless ordered otherwise by this Court, petitioner will be delivered to the West Virginia authorities on June 5, 1962, the day petitioner's maximum sentence expires.

Section 4241 provides:

"§ 4241. Examination and transfer to hospital

"A board of examiners for each Federal penal and correctional institution shall consist of (1) a medical officer appointed by the warden or superintendent of the institution; (2) a medical officer appointed by the Attorney General; and (3) a competent expert in mental diseases appointed by the Surgeon General of the United States Public Health Service.

"Such board shall examine any inmate of the institution alleged to be insane or of unsound mind or otherwise defective and report their findings and the facts on which they are based to the Attorney General.

"The Attorney General, upon receiving such report, may direct the warden or superintendent or other official having custody of the prisoner to cause such prisoner to be removed to the United States hospital for defective delinquents or to any other institution authorized by law to receive insane persons charged with or convicted of offenses against the United States, there to be kept until, in the judgment of the superintendent of said hospital, the prisoner shall be restored to sanity or health or until the maximum sentence, without deduction for good time or commutation of sentence, shall have been served."

That section, permitting as it does, an administrative determination that any inmate of any Federal penal and correctional institution may be found to be either insane, of unsound mind, or otherwise defective by a Board of Examiners has been held to be not unconstitutional.[3]

We believe that the rule of Holiday v. Johnston, 313 U.S. 342, 350–351, 61 S.Ct. 1015, 85 L.Ed. 1392 (1949) to the effect that "a petition for habeas corpus ought not be scrutinized with technical nicety" is applicable to any legitimate communication from an inmate in a Federal prison. But regardless of how broadly petitioner's letter in this case is considered, it is apparent that this Court has no power or jurisdiction to act in the context of this case.

3. Douglas v. King, 8 Cir., 110 F.2d 911, 127 A.L.R. 1200 (1940); Estabrook v. King, 8 Cir., 119 F.2d 607 (1941); Jones v. Pescor, 8 Cir., 169 F.2d 853 (1948). In the first two cases, the petitioner was given a hearing. In the last and most recent, an application for writ of habeas corpus was denied without hearing. See Opinion of the District Court in Jones v. Pescor, (W.D.Mo.) 73 F.Supp. 297 (1947).

Petitioner's letter specifically stated that he wished to proceed "under the provisions of Title 18, Section 4247 and 4248". In another part of his letter he "urgently requested that you overlook my ignorance of legal form and procedure and accept this letter as a petition for a sanity hearing in your court, requiring the officials here to show cause why I should not be released on June 5, 1962".

Section 4247 does contain a reference to Section 4241 but not in a manner helpful to petitioner. Section 4247 in its pertinent portion, provides:

"Whenever *the Director of the Bureau of Prisons shall certify* that a prisoner whose sentence is about to expire has been examined by the board of examiners referred to in title 18, United States Code, section 4241, and that *in the judgment of the Director and the board of examiners* the prisoner is insane or mentally incompetent, *and* that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, *and* that suitable arrangements for the custody and care of the prisoner are not otherwise available, the *Attorney General shall transmit the certificate to the clerk of the court for the district in which the prisoner is confined. Whereupon* the court shall cause the prisoner to be examined by a qualified psychiatrist designated by the court and one selected by the prisoner, *and shall, after notice, hold a hearing to determine whether the conditions specified* above exist * * *."  (Emphasis ours)

The Director of the Bureau of Prisoners has not certified that he and the Board of Examiners believe the prisoner whose term is about to exprire is insane or mentally incompetent under Section 4247. Nor has the Attorney General transmitted any such certificate to the Clerk of this Court. The Board of Examiners at Chillicothe Reformatory made its finding under Section 4241 over two years ago but that finding can not serve for the entirely different certification contemplated by Section 4247. In fact, there is grave doubt as to whether this Court has power to order a Board of Examiners to make such a certification.[4]

Section 4247 can not be said to be applicable for a second reason. Before a court hearing can be held in regard to a Section 4241 certified prisoner, "the Director of the Bureau of Prisons * * * and the Board of Examiners, acting pursuant to Section 4247, must exercise their judgment" and certify "that suitable arrangements for the custody and care of the prisoner are *not* otherwise available". Respondent, pursuant to the duty imposed upon him by Section 4243, notified the authorities of West Virginia that petitioner was about to be released from federal custody. The West Virginia

---

4. We, of course, do not rule that question because it is not before us, but see and compare Gregori v. United States, 5 Cir., 243 F.2d 48 (1957), involving the similar certificate under Section 4245, in which it is apparent that a district court attempted in the alternative "to direct the Attorney General * * * to file with the court either the certificate of probable cause by the Director of the Bureau of Prisoners contemplated by Section 4245 —together with the report of the Board of Examiners prepared pursuant to Section 4241." In reversing, the Court of Appeals for the Fifth Circuit, although commenting on "an apparent imbalance in the statutory provisions", held that "the wording of § 4245 * * * seems to exclude the possibility that proceedings under that section can * * * be initiated by either the court or the accused". See also United States v. Fooks, (D.C.D.C.) 132 F.Supp. 533 (1955), where a proper administrative report was made under Section 4245 and a five day hearing conducted in accordance with Section 4244. And see further Weldon v. Steele, (W.D.Mo.) 125 F.Supp. 667 (1954), where transfer was originally made pursuant to Section 4082, Title 18 U.S.C., but a Section 4241 examination was made by the Board of Examiners at Springfield Medical Center (rather than the institution of original confinement) and in which the standard forms in use by the Department of Justice were inexpertly modified.

Department of Public Health, "after careful consideration of the progress reports" of the petitioner has indicated a willingness to accept transfer to that State.

■ Dr. Charles A. Zeller, Director of that department, has advised that the petitioner will be admitted to the Huntington State Hospital under the emergency procedures of the laws of that State. Specifically, Dr. Zeller quoted Sections 2659 and 2663 of the 1961 West Virginia Code and, in summary, stated that petitioner will be "received, admitted under the temporary procedure, and then given the advantage of a hearing for legal commitment". Our examination of the laws of West Virginia, discloses that the procedure it intends to follow guarantees that petitioner will have the full right to appear and testify on his own behalf; that he will have a guardian ad litem, "who shall be a competent attorney", appointed for him; and that he will be afforded due process of law. Of course, the medical reports and findings already furnished the West Virginia authorities will undoubtedly be in evidence .in the West Virginia hearing, but those findings are in no way binding on West Virginia. In fact, the West Virginia law requires that two reputable physicians of that State be appointed to testify in the West Virginia hearing.

■ Under these facts, we do not reach two possible constitutional questions that lurk in this complicated area of the law involving, as it does, the delicate balance of federal and state relationship. The contemplated delivery of custody to Dr. E. B. J. Whitmore, Superintendent of Huntington State Hospital, Huntington, West Virginia (designated by Dr. Zeller as the individual to whom petitioner is to be delivered) is a delivery "into the custody of the proper authorities" of the State of petitioner's residence within the meaning of Section 4243. This Court must, on the facts of this case, presume that West Virginia will follow its own law and afford petitioner due process before any final commitment is made in that State. The con-

stitutional problems intimated by Chaloner v. Sherman, 242 U.S. 455, 37 S.Ct. 136, 61 L.Ed. 427 (1917), can not be said to be reached or to be present under the facts of this case because it can not be said that the United States will have delivered petitioner to an "improper" authority in the exercise of its power under Section 4243.

Nor do we reach questions left open by Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1955). That case sustained the constitutionality of Sections 4244–4248, Title 18 U.S.C. insofar as it related to persons *charged* with violations of Federal law and before any valid conviction. Sections 4241–4243 relate only to prisoners who have been legally convicted and who have been administratively determined to be either "insane, or of unsound mind, or otherwise defective" after legal confinement. It is true that Section 4247 purports to authorize confinement beyond service of the maximum federal sentence of prisoners certified under Section 4241, but that *power can be exercised only in the event that it should also be determined that* "suitable arrangements are not otherwise available" for the continued custody of the federal prisoner. Section 4247 *does not suggest what a "suitable arrangement" might be* but we do not reach that question here because delivery to the "proper authorities" in West Virginia is obviously a "suitable arrangement" in this particular case.

It should be noted, however, that Greenwood determined only that confinement after a Section 4247 hearing had determined that one *charged* with an offense against the United States was not mentally competent to stand trial was not an unconstitutional confinement because the federal power to prosecute had not been "irretrievably frustrated". "The power", the Supreme Court emphasized, "that put him into * * * [the legal custody of the United States] * * * —*the power to prosecute for federal offenses*—is not exhausted. * * * This commitment, and therefore the legislation authorizing commitment in the .con-

text of this case, involve an assertion of authority, duly grounded, auxiliary to uncontestable national power." Greenwood did not determine what power existed, if any, upon which the United States could base either legislation or a commitment when it not only had exhausted its power to prosecute for a federal offense, but it had also kept a prisoner in custody for the maximum term of his sentence. Greenwood, because that question was not before it, did not pass on that question. Nor, is it before us. The "proper authorities" of West Virginia have indicated their willingness to accept custody of petitioner.

We must, however, decide whether petitioner has any right to attempt to establish his eligibility for release by any sort of a hearing that would have the effect of overruling the administrative findings made pursuant to Sections 4241–4243 and thus establish his right to immediate release. May petitioner proceed under Section 4248 by an application for a writ of habeas corpus? Such procedure would clearly be available had petitioner been "committed under the authority of Section 4247", as expressly provided in Section 4248. We must also decide whether, independent of any statute, petitioner may make application for some sort of a sanity hearing by a letter to this Court protesting his delivery into the custody of the West Virginia authorities on the ground that in fact and in law he is neither "insane", nor is he a "menace to the public".

■ We are convinced that the controlling decisions of the Court of Appeals of the Eighth Circuit command the determination that this Court is without power or jurisdiction to hold any hearing, by habeas corpus or otherwise, to test the legally exercised judgment of the respondent within the context of this case.

In Kuczynski v. Cox, 8 Cir., 141 F.2d 321 (1944), the Eighth Circuit, in reviewing two habeas corpus proceedings from this Court, was careful to say it was "assuming without deciding that the finding of a commission provided by the government that the petitioner was mentally incompetent might be collaterally attacked". In Rosheisen v. Steele, 8 Cir., 193 F.2d 273 (1951), and in Garcia v. Steele, 8 Cir., 193 F.2d 276 (1951), an answer to that question was necessary for decision. In both cases, petitioners were in custody at the Springfield Medical Center pursuant to transfers made pursuant to Section 4241. In both cases, petitioners' applications were dismissed without a hearing. And, in both cases, that action by the District Court was affirmed.

In Rosheisen, the court held (l. c. 275 of 193 F.2d):

"Congress has confided to the Attorney General and the prison authorities, and not to the courts, the duty and responsibility of determining whether a federal prisoner is a suitable subject for confinement, care and treatment at the Medical Center, and what sort of medical care he needs. The administrative determination of such questions is not, in our opinion, subject to review in habeas corpus proceedings."

And in Garcia, it was held (l. c. 278 of 193 F.2d):

"Whether a federal prisoner is a suitable subject for hospitalization at the Medical Center is, in our opinion, a question for the Attorney General and the prison authorities, and not for the courts. It is not conceivable to us that every inmate of the Medical Center who considers himself to be sane and ineligible for confinement in that institution, can, by asserting that to be the fact, require the District Court to conduct a hearing and investigation to determine whether the prisoner should be in the Medical Center or in some penitentiary or correctional institution."

\* \* \* \* \* \*

"It is our opinion that the authority to classify federal prisoners for the purposes of confinement, care and

treatment, has been conferred exclusively upon the Attorney General, and that his determinations, made in the exercise of that authority, are not subject to review in habeas corpus proceedings."

And, on the broader ground of the inadequate scope of habeas corpus to test the legality of future confinements, see Williams v. Steele, 8 Cir., 194 F.2d 32 (1952), and the same case on rehearing, reported in 8 Cir., 194 F.2d 917 (1952). See also the Supreme Court and Courts of Appeals cases cited on page 34 of 194 F.2d.

For the reasons stated, paragraph 2 of this Court's order of May 22, 1962, setting this matter for hearing and paragraph 3 of that order directing the removal of the petitioner to this Court for the hearing should be and the same are hereby set aside.

Both petitioner and this Court are indebted to Loeb Granoff, Esq., an able member of the Bar of this Court, who served as court appointed counsel for the petitioner with diligence, intelligence, and energy. Mr. Granoff has advised the Court that petitioner will be represented in West Virginia by counsel employed by a friend of petitioner. Petitioner should also know that it is the expectation and desire of Dr. Settle, the respondent in this litgation, that the West Virginia "mental health officials will make their own independent evaluation of (petitioner's) case and decide whether or not subject be involuntarily, or voluntarily, committed, or whether in their judgment they are satisfied to return him to his community under out-patient follow-up, or such other follow-up techniques as may be available in their administrative structure". Dr. Settle summarized his position by stating "we are in effect saying to West Virginia, 'Look at this man and decide whether or not you want him free in your community or wish to evoke the mental health statutes of your own jurisdiction' ".

Under the facts alleged there is no question in this case but that respondent and the Staff at the Medical Center have acted in utmost good faith. Their action has been and is consistent with the laws of the United States. Accordingly, this Court lacks power and jurisdiction either to order a hearing or to order that petitioner be released. Petitioner's application is therefore denied.

In order that the views and decision of this Court may be known to and considered by the West Virginia authorities and in order that the record be clear that this Court has not in any way passed upon the present mental competency of petitioner, respondent will attach a certified copy of this Memorandum Opinion and Order to the papers transmitted at the time of delivery of custody of petitioner to the West Virginia authorities so that it will become a part of petitioner's official record.