**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**RYDER TANK LINES, INC., Respondent.**

No. 8632.

United States Court of Appeals Fourth Circuit.

Argued Sept. 27, 1962.

Decided Nov. 9, 1962.

Mary Griffin, Atty., N. L. R. B. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Marion Griffin and Peter M. Giesey, Attys. N. L. R. B., on brief), for petitioner.

John W. Wilcox, Jr., Atlanta, Ga. (Alexander E. Wilson, Jr., and Wilson, Branch & Barwick, Atlanta, Ga., on brief), for respondent.

Before SOPER and BRYAN, Circuit Judges, and JOHN PAUL, District Judge.

ALBERT V. BRYAN, Circuit Judge.

The threatened and subsequent discharge of two of its employees—Quenton Reese and Gordon Treadwell—by Ryder Tank Lines, Inc., was found by the Board to be in violation of the National Labor Relations Act.[1] Particularly, the threats and discharges were determined to be an interference with, and restraint upon, these men in the exercise of their rights to engage in concerted activity for the

1. 29 U.S.C. § 151 et seq.

purpose of mutual aid and protection in their employment. § 8(a) (1).[2] Additionally, the discharges were held to be discrimination in the tenure of the men's employment due to their union interest. § 8(a) (3).[3] Now the Board seeks to enforce its order requiring Ryder to reinstate Reese and Treadwell and desist from future interference, restraint or discrimination.

The Board concedes that the "layoffs were in order, because of lack of business" and that "[b]ecause of a loss of revenue" Ryder was necessarily reducing its employment roll. But the point made by the Board is that these two— senior employees—were chosen for discharge because of their prominence in presenting grievances and their history of campaigning for unionization. Adequate evidential support for the order, we think, is wanting. The record in its entirety does not furnish substantial foundation for the Board's determinations. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Ryder is an interstate common carrier of liquid freight. The dispute arose at the Fayetteville, North Carolina, terminal. Its other terminals are at Charlotte and Greensboro, North Carolina; Copper Hill and Knoxville, Tennessee; Franklin, Virginia; Charleston and Glasgow, West Virginia; and Dothan, Alabama.

■ The events of this litigation occurred in two separate periods—1959 and 1960. In June or July, 1959 Reese and Treadwell initiated the organization of the Fayetteville employees as a part of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, together with its Locals 391 and 71. All the drivers at the terminal, then eight in number, signed membership cards in Local 391. But in an election conducted by the Board on September 10, 1959 a majority of those balloting voted against entry into the union. The Examiner found the com-

pany had engaged in pre-election, anti-union conduct which accounted for the outcome of the election. However, nothing further was done about this behavior and more than six months elapsed thereafter before the present charges were filed on June 27, 1960. Hence the 1959 incidents are barred as the basis for any complaint presently. § 10(b), 29 U.S.C. § 160(b). Nevertheless both the Examiner and the Board look to the events of this period for "background"; this is permissible, of course, if the use of the prior incidents goes no further. Local Lodge No. 1424, I. A. M. v. N. L. R. B., 362 U.S. 411, 416–417, 80 S.Ct. 822, 826–827, 4 L.Ed.2d 832 (1960).

■ The threats in 1960 the Board cites are found in testimony indicating that Calvin E. Morrison, Ryder's Fayetteville terminal manager, told a new driver in February that the latter's interest in a union would mean the loss of his job; that he told Treadwell the same thing in April; and that in May he mentioned to a former employee, while drinking with him, that the company would have to get rid of Reese and Treadwell prior to July 15, when he anticipated there would be another election.

The concerted activity in 1960 cited by the Board is found in this incident: during the Spring Reese and Treadwell were discussing between themselves the probability that some of the junior drivers would have to be laid off. In this colloquy Reese stated that "we are not making enough money". Overhearing the conversation Morrison is reported to have said that he "would lay off who he damned please [sic]." The Board holds this was a discussion of working conditions and terms of employment protected under the Act.

On June 17, 1960 Lee Kruggel, who was the Operations Director of Ryder's whole system, with his office in Greensboro, by telephone instructed Morrison that, as a part of the company's reduction in force, he must discharge Reese, Treadwell and a third driver. Morrison earn-

2. 29 U.S.C. § 158(a) (1).

3. 29 U.S.C. § 158(a) (3).

estly protested any layoff of either Reese or Treadwell. To force Morrison to obey, it became necessary for the Vice-President of the company to threaten Morrison with replacement if he failed to carry out the discharge orders.

To compose himself that evening after the unpleasant task of writing the discharge letters Morrison began drinking immoderately. In this state he made several telephone calls to the homes of other employees, hinted Reese and Treadwell had been discharged and inferred that the other employees should be seriously thoughtful of what they would do in the election of "July 15".

Without contradiction and without impeachment of their credibility, the Vice-President and the Operations Manager of Ryder testified that Reese and Treadwell were removed only because of their continued attempt to usurp the management of the terminal and their constant arguments with management as to the manner of its operations. They said that these two men were constantly "bickering, backbiting". Employees of Ryder testified, moreover, that after the discharges, the atmosphere at the terminal was more harmonious, with less complaining than previously.

In this connection it should be observed that there was no seniority policy among the employees. Furthermore, the terminals at Greensboro and Charlotte were already unionized. Again, the company had made similar layoffs at both the other North Carolina terminals, four at each place. No replacement has been made of any of them.

Our conclusions taken from the entire record are twofold:

(1) A violation of § 8(a) (1) has not been established. The so-called threats of Morrison to and about Reese and Treadwell in 1960 were in no degree connected with their discharges. His resistance to their disengagement with the company was unfeigned, his good faith unquestioned. No one suggests it was a sham. Of course his telephone calls during his intoxication, after he had been instructed to get rid of Reese and Treadwell, could not have contributed to any extent to their disemployment.

At all events, there was no concerted activity by Reese and Treadwell which could be restrained or interfered with by the Morrison threats or by the discharges. Surely, the one incident to which the Board points—the conversation about the probability of the discharge of junior drivers—is not worthy to be dignified as concerted activity. There is no satisfactory proof that the "grievances" expressed by Treadwell and Reese to their employer—in the six-month period before the present charges were filed—touched upon wages, hours or other working conditions. Treadwell told the company's Director of Operations after discharge that "it was the best job he had ever had, it paid more money than he had ever made." The Examiner himself is unable to find unequivocally that the employees' discussions were of a protected nature. He classified them into two categories: "griping and grousing" and "some concerned * * * wages, hours or other conditions of employment". He confesses that "the record is such that the undersigned cannot separate the wheat from the chaff (the protected [activity] from the unprotected)". Notwithstanding, he "believes, finds and concludes" there was an evil motive among them. This is either conjecture or an allusion to the one, and altogether tenuous, incident we have just mentioned as found by the Board.

(2) There is not substantial evidence to sustain a § 8(a) (3) violation, that is to prove Reese and Treadwell were discharged to "discourage membership in any labor organization". It is interesting that Treadwell stated to the Operations Director, "Your trouble is, not that we need a union, but we need a new manager * * *". The Examiner found no such violation; it was added by the Board.

The employer's and not the Board's position, we think, is the one proved by substantial evidence.

Enforcement of Order Denied.