**Kieran James MAURIETTA, Petitioner,**

v.

**Dr. P. J. CICCONE, Director, Respondent.**

**No. 17142-1.**

United States District Court
W. D. Missouri, W. D.

Nov. 14, 1969.

Duke W. Ponick, Jr., Morris, Foust, Moody & Jacobson, Kansas City, Mo., for petitioner.

Calvin K. Hamilton, U. S. Atty., Frederick O. Griffin, Asst. U. S. Atty., Kansas City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

### I.

Petitioner, an unconvicted inmate of the Medical Center for Federal Prisoners, seeks to establish in this habeas corpus proceeding his eligibility for release from that institution in accordance with the proviso contained in Section 4248, Title 18, United States Code.[1]

Petitioner's current confinement in the Medical Center is based on an order of commitment to the custody of the Attorney General entered by the District of Arizona on January 20, 1969 pursuant to Sections 4244–4248, Title 18, United States Code. The order of that court contained the following specific Section 4247 finding of dangerousness:

If released, accused probably will endanger the safety of officers, the property, or other interests of the United States.

Petitioner does not contend that the procedures followed in connection with petitioner's January 14, 1969 commitment to the Medical Center were in any way constitutionally infirm. Petitioner states that "there is no question but that petitioner lawfully came into the custody of the United States; the issue is whether that custody should continue."

The following facts, all of which the Government concedes are either stipulated or adequately supported by the testimony of witnesses in the employ of the United States, are sufficient to place in focus the only question we need to reach in this case.

It is stipulated that petitioner's current commitment to the Medical Center is but the last of several. His first, over twenty years ago, involved a transfer to the Medical Center for psychiatric treatment on August 16, 1943, from the Federal Reformatory at Chillicothe, Ohio, to which petitioner had been committed by the Northern District of Illinois as a juvenile delinquent. On January 15, 1963, some twenty years later, petitioner was convicted on a plea of guilty to a check charge in the Northern District of Illinois. A Section 4208(b) study was ordered by that court. After psychiatric examination at the Medical Center, petitioner's conviction was set aside under Section 4245 as a result of that study. After a four month confinement under Section 4246, the 1963 federal charge was dismissed and petitioner was released pursuant to Section 4248.

Two years later, and on October 6, 1965, petitioner was again committed to the Medical Center by the Northern District of Illinois under Section 4246. After habeas corpus litigation was commenced in this Court (Maurietta v. United States, No. 15784–1, unreported), the 1965 federal charge was dismissed, and on January 4, 1966, petitioner was transferred to the Mental Health Clinic of Cook County, Illinois, Hospital, pursuant to Section 4248.

The record does not reflect exactly how petitioner became a patient at the Illinois State Psychiatric Institute in Chicago and still later at the Chicago State Hospital. It is clear however, that he was a patient at the latter institution as late as February 10, 1967 (Tr. 205) and that shortly thereafter he somehow got from there to the District of Arizona where the check transaction in-

1. The applicable portion of Section 4248 provides that "nothing herein contained shall preclude a prisoner committed under the authority of Section 4247 hereof from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus."

volved in petitioner's current charge allegedly occurred.

The check allegedly involved in petitioner's current federal charge was dated February 24, 1967. The State of Arizona filed charges against petitioner shortly thereafter. For reasons not apparent from the record, the United States thereafter indicted petitioner on March 16, 1967. The United States, however, did not assume actual custody of the petitioner until the District of Arizona committed petitioner to the Medical Center under Section 4246 on October 3, 1968. Petitioner was returned to the District of Arizona for a Section 4244 hearing in January, 1969. At that hearing the District of Arizona made its Section 4247 finding of dangerousness and, on January 14, 1969, again committed petitioner to the Medical Center where he has since been confined.

The Government does not, as indeed it cannot under the undisputed evidence, contest that petitioner's mental condition has long been diagnosed as a chronic schizophrenic reaction, paranoid type, of long duration; that for years petitioner, because of the intensity of his delusional system, has never been and is not likely ever to be competent to stand trial; that petitioner's mental condition at the time of the alleged offense was such that he could not lawfully be held to be criminally responsible for his actions in connection with his alleged violation of Section 2314, Title 18, United States Code; and that petitioner, if now released, would not endanger the safety of the officers, the property, or other interests of the United States, within the meaning of Section 4248. Those findings are based on the undisputed psychiatric testimony presented by Dr. Glotfelty, Chief of the Psychiatric Services at the Medical Center, Dr. Ash, a psychiatrist on the Medical Center staff, and Dr. Ciccone, Director of the Medical Center, who testified he accepted that testimony.

## II.

Petitioner's habeas corpus petition and the evidence adduced at the hearing presented numerous questions in addition to the question of whether he had established his eligibility for release by proof that he was no longer dangerous. Petitioner attacks the constitutionality of Sections 4244 to 4248 as those sections are applied to petitioner, contending that the Medical Center is physically and administratively a prison or penal institution, rather than a mental health hospital; that petitioner's federally protected constitutional rights as guaranteed all unconvicted persons have been consistently violated; that petitioner is regularly and daily unlawfully commingled with convicted prisoners; and that petitioner has not and cannot in the foreseeable future receive the medical care and treatment contemplated by the Congress when it added Sections 4244 to 4248 to Chapter 313 of the United States Code in 1949.

The Government concedes that:

Courts have unquestionably moved toward a position of evaluating the constitutionality or legitimacy of a mental commitment on the basis of the propriety of the commitment procedure, Baxstrom v. Herold, 383 U.S. 107 [86 S.Ct. 760, 15 L.Ed.2d 620] (1966); United States ex rel. Schuster v. Herold, 410 F.2d 1071 (C.A. 2, 1969), and on the basis of the treatment afforded during the commitment, Rouse v. Cameron, [125 U.S.App.D.C. 366] 373 F.2d 451 (D.C.Cir., 1967).

If determination of this case required that we apply the principles enunciated in the cases cited by the Government, we would also be required to consider the applicability of other cases and authorities in this rapidly developing area of law to which petitioner has directed our attention. Included are Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Miller v. Overholser, 1953, 92 U.S.App.D.C. 110, 206 F.2d 415; White v. Reid, D.C.D.C. 1954, 126 F.Supp. 867; In re Maddox,

351 Mich. 358, 88 N.W.2d 470 (1958); Director of Patuxent Institution v. Daniels, 243 Md. 16, 221 A.2d 397 (1966); Nason v. Superintendent of Bridgewater State Hosp., 1968, 353 Mass. 604, 233 N.E.2d 908; United States ex rel. Schuster v. Herold, 2 Cir., 1969, 410 F.2d 1071; and Matthews v. Hardy, D.C. 1969, No. 22,315, decided August 29, 1969, but not yet reported. See also Birnbaum, The Right to Treatment, 46 A.B.A.J. 499 (May, 1960); Foote, A Comment on Pre-Trial Commitment of Criminal Defendants, 108 U. of Pa. L.Rev. 832 (1960); Barkin, The Emergence of Correctional Law and the Awareness of the Rights of the Convicted, 45 Neb.L.Rev. 169 (1966); Notes, The Nascent Right to Treatment, 53 Va.L.Rev. 1134 (1967); Notes and Comments, Civil Restraint, Mental Illness, and the Right to Treatment, 77 Yale L.J. 87 (1967). Cf. Cohen, The Legal Challenge to Corrections, Consultant's paper prepared for the Joint Commission on Correctional Manpower and Training (March, 1969), and The President's Commission on Law Enforcement and Administration of Justice: Task Force Report on Corrections.

Because it is possible, we decide this case without reaching the many grave constitutional questions which might be presented by an application of the principles articulated in the authorities noted in the last paragraph. This Court has frequently noted, see Pavlick v. Harris (W.D.Mo., 1963), 222 F.Supp. 79, 81, and Kurnava v. United States (W.D. Mo., 1966), 222 F.2d 822, 826, for examples, the need for a federal mental hospital facility suitable for the civil hospitalization of mentally disturbed federal criminal defendants. We foresee the day when a particular case may require that we reach and decide the type of constitutional questions obviously presented under a factual situation similar to that established in this case.

In this particular case, however, we need determine only (1) whether the petitioner has in fact and in law established his eligibility for release from the custody of the Attorney General in this habeas corpus proceeding and (2) what order is appropriate, in accordance with the command of Section 2243, Title 28, United States Code, to dispose of this matter as law and justice require. We find and conclude that petitioner is entitled to appropriate habeas corpus relief for the reasons we now state.

### III.

Both parties agree that the point of beginning is Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956). It is of greatest importance, however, to recognize that *Greenwood* did not determine the question presented by this case. *Greenwood* decided only the "narrow constitutional issue raised by the order of commitment in the circumstances of [that] case" [350 U.S. at 375, 76 S.Ct. at 415].[2] The order of commitment there involved was based upon a specific Section 4247 finding of dangerousness. That finding was held to be adequately supported by the record. The commitment involved in *Greenwood* expressly provided, in the language of Section 4248, that the defendant be "committed to the custody of the Attorney General until his sanity should be restored, or his mental condition so improved that, if released, he would not endanger the safety of the officers, property, or other interests of the United States, or until suitable arrangements could be made for the custody and care of defendant by Ohio, the State of his residence" [350 U.S. at 372, 76 S.Ct. at 414]. *Greenwood* was explicitly based on the rationale that "the second sentence of § 4246 clearly makes commitment under § 4248 applicable to persons found mentally incompetent under § 4244 who meet the conditions specified in § 4247" [350 U.S.

2. On page 376 of 350 U.S., at page 415 of 76 S.Ct., the Supreme Court reiterated that "we decide no more than the situa-

tion before us presents and equally do not imply an opinion on situations not now before us."

at 374, 76 S.Ct. at 415]. *Greenwood* determined only that a defendant found to meet the § 4247 conditions, including that of dangerousness, could be constitutionally held in Section 4248 custody. *Greenwood* obviously strained to reach that conclusion; it refused to intimate anything further.[3]

This case involves a factual situation which presents a question that arises immediately beyond the narrow question presented in *Greenwood*. We must assume, for purposes of this case, that the District of Arizona's Section 4247 finding of dangerousness was adequately supported by the record made in that court. As in Pavlick v. Settle (W.D. Mo.1962), 203 F.Supp. 42, 43, we proceed on the basis that petitioner initially was lawfully committed to custody of the Attorney General.

Under *Greenwood*, the only custody authorized once it is judicially determined that the defendant meets the conditions specified in Section 4247 is the commitment authorized by Section 4248. The obvious purpose of making Section 4247 findings is to insure a commitment of longer duration than that authorized by Section 4246. The fact that the commitment involved in this case did not expressly use Section 4248 language is not legally significant. See Sturdevant v. Settle, W.D.Mo.1961, 192 F.Supp. 534, 538, where the same circumstance was present.

Section 4248 expressly provides that the more than temporary commitment authorized by that section only "shall run [a] until the sanity or mental competency of the person shall be restored *or* [b] until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States, *or* [c] until suitable arrangements have been made for the custody and care by the State of his residence, *whichever event shall first occur*" [Emphasis ours]. And Section 4248 also expressly recognizes that "nothing herein contained shall preclude a prisoner committed under the authority of Section 4247 hereof from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus."[4]

## IV.

■ The Government does not dispute our required factual finding that petitioner has established that if he is now released he would not endanger the safety of the officers, property, or other interests of the United States. The Government, however, contends that the petitioner nevertheless has not established his eligibility for release because "the issue of dangerousness is one for the determination of the committing court." The Government's argument that "the petitioner should be returned to the District of Arizona for re-evaluation of * * * the issue of dangerousness" is not supported by the citation of any authority. We conclude that the Government's contention is not tenable.

---

3. Mr. Justice Frankfurter stated in *Greenwood* that "this is a case for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute" [350 U.S. at 374, 76 S.Ct. at 415]. That statement was made to negate the inference supported by "the reports on the bill by the Committee, by the Judicial Conference itself, and by the committees of both Houses of Congress that the specific commitment under § 4248 was designed only for prisoners whose sentences are about to expire" [350 U.S. at 374, 76 S.Ct. at 415].

4. *Greenwood* ignored the fact that the proviso in Section 4248 recognized the right of a "prisoner" to establish his eligibility for release. That case implicitly assumed that the word "prisoner" was broad enough to include an unconvicted person held in custody. We believe the right of an unconvicted inmate to proceed in habeas corpus exists independently of the recognition given the right of habeas corpus in Section 4248. We therefore conclude that the perhaps inadvertent Congressional use of the word "prisoner" in Section 4248's habeas corpus proviso is without legal significance.

Section 4248 contains an express proviso which provides that "nothing herein contained shall preclude a prisoner * * * from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus." Petitioner is confined in this district. This district is the only district which has habeas corpus jurisdiction, Section 2241, Title 28, United States Code. As we shall make clear, our conclusion that this Court has habeas corpus jurisdiction under the circumstances of this case does not mean that the interests of the committing court are to be disregarded.

## V.

The Government cites Rosheisen v. Steele (8th Cir. 1951), 193 F.2d 273; Frye v. Settle (W.D.Mo.1958), 168 F.Supp. 7, 9; Tienter v. Harris (W.D. Mo.1963), 222 F.Supp. 920; Johnston v. Ciccone (W.D.Mo.1966), 260 F.Supp. 553; Kroman v. Ciccone (W.D.Mo. 1967), 273 F.Supp. 201; and Parks v. Ciccone (W.D.Mo.1968), 281 F.Supp. 805, to support its contention that this Court should not exercise its habeas corpus jurisdiction to determine whether petitioner, if released, would not endanger the safety of the officers, the property, or other interests of the United States. Those cases, and many more like them,[5] all involve Section 4246 commitments in which no Section 4247 finding of dangerousness was made by the committing court. Those cases present an entirely different question which calls for a different application of the principle that a defendant remains the ward of the committing court.

The principles enunciated in the Section 4246 cases cited and noted are not fully applicable to a Section 4248 commitment case because an express finding of dangerousness under Section 4247 was not involved in those Section 4246 cases. Numerous cases in this and other courts have focused on the significance of a finding of dangerousness specified in Section 4247. Those cases point out that the general statutory plan of Sections 4244 to 4248 contemplated that two separate judicial determinations must be made before an accused may be indefinitely committed to the custody of the Attorney General. To have required less would have presented grave constitutional questions on the very face of the statute.

If a particular court finds at a Section 4244 hearing only that the accused is competent to stand trial, Congress contemplated, according to *Greenwood's* rationale, that the accused could at most be committed only a reasonable period of time under Section 4246 until "[a] the accused shall be mentally competent to stand trial or [b] until the pending charges against him are disposed of according to law." Section 4246 granted only discretionary power to commit; it expressly provided that "the court *may* commit the accused to the custody of the Attorney General," not *shall.* Apparently Congress did not anticipate that many custodial commitments would be made under Section 4246.

When the evidence in a particular case negated a possible Section 4247 finding of dangerousness, courts have consistently refused to commit the accused to custody. United States v. Gorobetz (D.C.N.J.1957), 156 F.Supp. 808, is an example of where that precise factual situation was presented. That case, after noting the discretionary language of Section 4246 and the mandatory language of Section 4248, stated:

These statutes [Sections 4246 and 4248] thus indicate the Congressional intent to be, in the first place, that the court is vested with the exercise of a sound discretion as to whether

5. See, for other examples, Seelig v. United States (8th Cir. 1962), 310 F.2d 233; Johnson v. Settle (8th Cir. 1962), 310 F.2d 349; Glenn v. Ciccone (8th Cir. 1966), 370 F.2d 361; McDonald v. Ciccone (8th Cir. 1969), 409 F.2d 28; Smith v. Settle (W.D.Mo.1962), 211 F. Supp. 514; Tyler v. Harris (W.D.Mo. 1964), 226 F.Supp. 852; Arco v. Ciccone (W.D.Mo.1965), 252 F.Supp. 347; and Mast v. Ciccone (W.D.Mo.1968), 287 F.Supp. 456.

or not under such circumstances to commit the accused to actual custody, and further, that he is to be committed to such custody only "until the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States." [156 F.Supp. at 810].

That court summarized the medical testimony and applied its construction of the related statutes as follows:

Since all the testimony, both lay and medical, now indicates that such is Gorobetz' present condition [i. e., nondangerous], it would seem to accord with the Congressional intent that pending further action by the Government on the present charges, Gorobetz should be released from custody. [Ibid].

The recent case of United States v. Curry (4 Cir. 1969), 410 F.2d 1372, 1374, appropriately stated the following in regard to the Congressional intent evidenced by its 1949 passage of Sections 4244 to 4248:

Collectively, the statutes intend that a defendant, although found incompetent, cannot be unduly deprived of his liberty unless he will be dangerous to society. Further, they permit continuation of confinement even under a supportable commitment—not to be confused with the prosecutory process—only until the criminal charges against him have been disposed of, or he has regained or is so improved in mind as not to be a threat, after release, to the safety of himself or others. * * *

In sum, though mental incompetency exists or the accusations of crime are still outstanding, restraint by or under a § 4246 commitment, except for the limited purposes we have noted, is justified only after a determination has been made that release of the prisoner will imperil him or the public.

The Fourth Circuit in *Curry* directed the District Courts in that circuit as follows:

In the future, furthermore, after incompetency has been adjudged under § 4244, we think the trial court should not commit a defendant into custody, pursuant to § 4246, unless and until the court shall also have determined that the defendant might, if released, be a public or private danger. The court may, of course, detain him for a reasonable time to observe and otherwise inquire into his propensities, and also to treat him for his illness in the hope of restoring competency. By its permissive terms, § 4246 clearly contemplates that the finding of incapacity does not compel commitment.

United States v. Klein (2 Cir. 1963), 325 F.2d 283, 284, summarized the purpose and plan of the 1949 amendments to Chapter 313 as follows:

18 U.S.C. §§ 4244 and 4246 provide for discretionary commitment of a defendant who is mentally incompetent to stand trial. * * * If a defendant otherwise subject to the provisions of §§ 4244 and 4246 is found to satisfy the "danger to safety" standard of §§ 4247 and 4248, the statute requires that the government proceed under the latter provisions, Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), and hence detain the defendant *only until he no longer presents such a danger, even if he is still incompetent to stand trial.* [Emphasis ours].

See also Royal v. United States (10 Cir. 1960), 274 F.2d 846, 853, in which it was stated that unless an adequately supported Section 4247 finding of dangerousness is made, an accused's "detention under Section 4247 of course would not be justified."

Judge Ridge's opinion in Harrison v. Settle (W.D.Mo.1957), 151 F.Supp. 372, illustrates that the principles just stated have long been applied in this District.

Harrison was originally committed to the Medical Center under Section 4246 on December 4, 1952. After the lapse of what Judge Ridge determined to be a reasonable time he was ordered, on September 14, 1954, returned to his committing court, the Eastern District of Virginia, for further hearing. That court, after further hearing, made adequately supported Section 4247 findings of dangerousness and committed Harrison to the Medical Center under Section 4248. The validity of that commitment was not placed in issue but Harrison, in the same manner as petitioner in this case, filed a new habeas corpus petition in which he alleged in somewhat inarticulate language that he was both competent and that he was not dangerous. Judge Ridge treated Harrison's habeas petition as follows:

Liberally construed, said application proffers the issue of petitioner's present mental ability to stand trial on the charges pending against him, and "his eligibility for release" from the Medical Center as provided in Section 4248, supra. Although this District Court, under applicable law and Rules of Criminal Procedure, 18 U.S. C.A., may not adjudicate the first above issue (Higgins v. McGrath, D.C., 98 F.Supp. 670), *we are duty-bound to hear petitioner out on the latter issue.* [151 F.Supp. at 373]. [Emphasis ours].

Judge Ridge discussed the medical evidence in detail and found, as a fact, as we have in this case, that petitioner had established that it could no longer be said that the accused, if released, would endanger the safety of the officers, the property, or other interests of the United States. He therefore concluded that "it appears that the factual premise of the order of commitment, by virtue of which petitioner is presently being held, has now been dispelled, and that said order is presently without any legal premise to sustain the further detention of petitioner thereunder." [151 F.Supp. at 374-375].

In reliance upon *Greenwood,* Judge Ridge stated:

[W]hen the factual premise of a commitment under Sections 4246–4248, supra, no longer exists, then, regardless of the mental condition of the person committed thereunder, such as petitioner, he cannot, under the Constitution of the United States, or within due process of the criminal procedure established by the Congress in enactment of the said sections, be further retained in the custody of the Attorney General thereunder.

Later, in the same opinion, he reiterated that:

[W]hen it is established that a person who stands committed to the custody of the Attorney General, such as petitioner, "does not appear to represent a danger to others" all lawful authority under the Constitution of the United States and the statutory scheme enacted by the Congress under Sections 4246–4248, supra, is exhausted and he is entitled to have his right to release therefrom determined by way of habeas corpus, as petitioner here does.

Judge Smith's opinion in Martin v. Settle (W.D.Mo.1961), 192 F.Supp. 156, establishes that all of the then active judges of this District were in accord in regard to the proposition that "if the accused continues to be unable mentally to stand trial under Section 4246, a subsequent hearing should be had by the committing court for confinement under the provisions of Sections 4246, 4247, 4248" [192 F.Supp. at 158]. See also Royal v. Settle (W.D.Mo.1959), 192 F.Supp. 176, another opinion by Judge Ridge, from which Judge Smith quoted extensively in *Martin.*

Chief Judge Becker cited and followed the rationale of Martin v. Settle in Pavlick v. Settle (W.D.Mo.1962), 203 F.Supp. 42. Although Chief Judge Becker found the § 4248 commitment valid under the command of *Greenwood,* he nevertheless granted habeas corpus relief and directed that Pavlick be re-

turned to his committing court for that court to ascertain whether he was in fact competent to stand trial. It is important to note that the question of whether Pavlick was dangerous was not placed in focus because "the consulting staff psychiatrist testified that only upon an assumption of petitioner's guilt of the pending charges could he express an opinion that petitioner was potentially dangerous."

Chief Judge Becker's opinion in the second Pavlick case, Pavlick v. Harris (W.D.Mo.1963), 222 F.Supp. 79, shows that Pavlick's committing court again committed him to the Medical Center under a new Section 4248 order on June 6, 1963, some fifteen months after habeas corpus relief had been granted in his first case.

Chief Judge Becker noted the base of this Court's jurisdiction by stating "exercising his right to test through *habeas corpus* the continuance of his detention from time to time, by establishing his eligibility for release (Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412) petitioner filed this second petition asserting his competency to stand trial, and requesting his release because of his detention for an unreasonable time."

Habeas corpus was again granted and Pavlick was again ordered returned to his committing court. *Pavlick II* made clear that his "eligibility for release" under Section 4248 was based solely on his claim that "his sanity or mental competency [had been] restored." The separate and different question of whether he was still dangerous was not litigated. Indeed, Chief Judge Becker explicitly stated that "without reference to the finding that petitioner is dangerous, there does not appear to be any prospect that the petitioner will ever be tried unless the committing Court finds him competent to stand trial" [222 F.Supp. at 80].

We noted Martin v. Settle in our opinion in Craft v. Settle (W.D.Mo. 1962), 205 F.Supp. 775, which required construction of Sections 4241 to 4243 rather than Sections 4244 to 4248. We stated by way of dictum in *Craft* that:

May petitioner proceed under Section 4248 by an application for a writ of habeas corpus? Such procedure would clearly be available had petitioner been "committed under the authority of Section 4247", as expressly provided in Section 4248. [205 F.Supp. at 780]

See also Clark v. Settle (W.D.Mo. 1962), 206 F.Supp. 74, 78, where in another Sections 4241–4243 case we stated again, by way of dictum, that "the term of commitment under * * * Section 4247 would run only until the prisoner's sanity or mental condition has been so improved that if released, he will no longer be dangerous, or until suitable arrangements shall have been made for his custody and care by the State of his residence, whichever event shall first occur" [206 F.Supp. at 78].

It is clear from what we have stated that an unconvicted person in custody at the Medical Center pursuant to the authority of Section 4248 under the circumstance of a Section 4247 finding of dangerousness has the right to establish his "eligibility for release" in a habeas corpus proceeding filed in this Court, the only district possessing habeas corpus jurisdiction, in which he may appropriately place in issue the question of whether "if he be released he will not endanger the safety of the officers, the property, or the other interests of the United States" within the purview of Section 4248.

In light of our finding that petitioner would not endanger the safety of the officers, the property, or the other interests of the United States, it is obvious that petitioner is entitled to and will be granted appropriate habeas corpus relief.

VI.

Petitioner suggests that law and justice require that we immediately order that petitioner be released from the Medical Center and that we presently

order that he be transported to Illinois on condition that he voluntarily submit to treatment at a psychiatric facility in that State as soon as circumstances permit. The Government, on the other hand, suggests that if such an order were made and petitioner "is ordered released without concurrent dismissal of the charge in Arizona, he would, of course, be subject to rearrest on those charges." We believe that we should have further data before any final order is entered in this case.

■ Section 2243, Title 28, United States Code, requires that this Court, in the exercise of its habeas jurisdiction, dispose of this case "as law and justice require." Our disposition of this case should also be consistent with the general principles of comity enunciated in the Section 4246 cases to which we have made reference. Those cases recognize that regardless of the form of the Chapter 313 commitment, the accused but unconvicted defendant remains the ward of the committing court even though such person is outside the geographical jurisdiction of that court.

What law and justice may require in a particular habeas corpus proceeding must be determined on a case by case basis. The circumstances in Sturdevant v. Settle (W.D.Mo.1961), 192 F.Supp. 534, 542, for example, required a determination that "federal authority to prosecute has now been irretrievably frustrated," within the meaning of the rule stated in *Greenwood* (350 U.S. at 375, 76 S.Ct. at 415). Judge Ridge, therefore, directed that the petitioner be delivered to the authorities of the Wyoming Hospital, Evanston, Wyoming.

■ While such a finding may be warranted under the circumstances of this case, we are of the opinion that other exceptional circumstances, not present in this case, must be said to exist before this Court issue its final writ without first making appropriate inquiry to ascertain the views of the committing court and the views of the United States Attorney in that district.

We have been in communication with the Honorable James A. Walsh, Chief Judge of the District of Arizona, several times during the course of this proceeding. We have recently advised him that a copy of this memorandum opinion will be forwarded to him before any final order is entered in this case. He has indicated that he will promptly advise this Court of his views after he has had an opportunity to review the circumstances in his district.

We have also advised Judge Walsh that the testimony at the hearing established that the United States Attorney for the District of Arizona has stated to the authorities at the Medical Center that he would present a motion to Chief Judge Walsh to dismiss the pending federal charges against petitioner in the District of Arizona in order to facilitate petitioner's contemporaneous admission to an appropriate State mental health institution [Tr. 15 and 208]. This Court is grateful for the cooperation of the United States Attorney for the District of Arizona indicated at the hearing. We are confident that Chief Judge Walsh will promptly advise us whether any intervening circumstances require any different position on the part of the United States District Attorney for his district than that stated at the hearing and of his view concerning the dismissal of the pending charges in his district should a motion to dismiss be presented.

Duke W. Ponick, Jr., Esquire, a member of the Bar of this Court, has represented petitioner *pro bono publico* under appointment of this Court. Mr. Ponick, consistent with the exemplary quality of the services he has rendered the petitioner throughout this proceeding, has located a member of petitioner's family in Chicago, Illinois and has made appropriate inquiry concerning petitioner's admission to a mental hospital in Illinois. As a result of Mr. Ponick's efforts and from the evidence adduced at the hearing, we believe it likely that Illinois will accept petitioner back into one of its mental health hospitals, particularly in light of the fact petitioner

was so recently a patient in an Illinois institution immediately before he wandered to Arizona in 1967.[6] This Court expresses its appreciation for the service Mr. Ponick has rendered petitioner and this Court. That service has been in the highest tradition of the Bar.

## VII.

For the reasons stated, we conclude that petitioner is entitled to appropriate habeas corpus relief. In order to ascertain what final order should be entered pursuant to Section 2243, Title 28, United States Code, it is

Ordered that a copy of this memorandum and order be forwarded to the Honorable Judge James A. Walsh, Chief Judge of the United States District Court for the District of Arizona, so that this Court may have the benefit of his views and of the views of the United States Attorney for the District of Arizona as above stated. It is further

Ordered that in the event Chief Judge Walsh advises this Court that appropriate proceedings will be taken in the District of Arizona consistent with the evidence adduced at the hearing in regard to the dismissal of the federal charges pending in the District of Arizona, we will then request Mr. Ponick to advise this Court in particular regard to where and to whom petitioner should be delivered in order that appropriate steps may be taken to have petitioner admitted in a mental hospital in the State of Illinois. It is further

Ordered that our final order will not be entered until we have the benefit of Chief Judge Walsh's views and until after, should it become appropriate under the circumstances, we have received further advice from Mr. Ponick.

---

6. The evidence establishes that petitioner received treatment at the Chicago State Hospital as recently as February 10, 1967, just two weeks before petitioner's offense was allegedly committed [Tr. 205]. The files and records of this Court further show that petitioner did not en-

counter any difficulty in being accepted by the State of Illinois after petitioner's last federal charge was dismissed in 1965. See Maurietta v. United States, No. 15784–1, in this Court. Appropriate provision, however, will be made in that regard in our order.