**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Herman KLEIN, Defendant-Appellant.**

**No. 235, Docket 28535.**

United States Court of Appeals
Second Circuit.

Argued Dec. 6, 1963.

Decided Dec. 12, 1963.

---

284

James E. Birdsall (of Warner & Birdsall), New York City, for defendant-appellant.

Harold Baer, Jr., Asst. U. S. Atty., Southern Dist. of New York, New York City (Robert M. Morgenthau, U. S. Atty., and Charles A. Stillman, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

Before MOORE, FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

Herman Klein appeals from a judgment and order of commitment, entered pursuant to 18 U.S.C. § 4246. In April of 1962, Klein was indicted for income tax evasion. After four separate hearings and extensive examinations by three different psychiatrists, he was found mentally incompetent to stand trial under 18 U.S.C. § 4244. Although the psychiatrist who had treated him for more than thirty years insisted that institutionalization would prove "catastrophic," Klein was committed to the custody of the Attorney General until "he shall be mentally competent to stand trial, or until the charges in the indictment pending against him are disposed of according to law." [1]

Certain essential facts are not in dispute. Klein is said to be suffering from a manic-depressive psychosis, and has been so afflicted for the better part of his sixty years. His father committed suicide when Klein was an adolescent, and

1. 18 U.S.C. §§ 4244 and 4246 provide for discretionary commitment of a defendant who is mentally incompetent to stand trial. 18 U.S.C. §§ 4247 and 4248 authorize continued detention of a federal prisoner whose sentence is about to expire and who is so mentally incompetent that if released "he will probably endanger the safety of the officers, the property, or other interests of the United States." If a defendant otherwise subject to the provisions of §§ 4244 and 4246 is found to satisfy the "danger to safety" standard of §§ 4247 and 4248, the statute requires that the government proceed under the latter provisions, Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), and hence detain the defendant only until he no longer presents such a danger, even if he is still incompetent to stand trial. In the present case, there has been no contention that Klein might endanger the safety of any person other than himself. In view of our ultimate disposition of the appeal, it is unnecessary to discuss the constitutional or statutory validity of a commitment in which the defendant committed did not so endanger "the officers, the property, or other interests of the United States." In light of the distinctive factual pattern presented by this appeal, it similarly seems unnecessary to explore general questions of federal power over an accused mentally incompetent to stand trial; neither is extensive recourse to medical texts warranted.

pronounced suicidal tendencies have been discovered in appellant. The medical reports further revealed that Klein is a diabetic, suffering from high blood pressure and is presently recuperating from a major rectal operation.

At the final competency hearing, the inquiry was directed towards selecting that method of treatment most likely to ameliorate Klein's admittedly deteriorating mental condition. Dr. Dudley Shoenfeld, the appellant's treating psychiatrist, testified in response to questions by the court that Klein's physical ailments would preclude the extensive pharmacological treatment or shock therapy recommended by one of the government's psychiatrists. Relying on his more than thirty years of close observation of the appellant, he emphasized the dangers of disrupting Klein's normal way of life, and urged that he not be summarily removed from his home environment and a familiar pattern of therapy. Dr. Shoenfeld insisted that to a manic depressive with suicidal tendencies, the impact of institutionalization could be drastic; he warned that commitment would be "tantamount to signing Klein's death warrant."

Dr. Donald B. Douglas, a psychiatrist appointed by the court who had examined Klein on three occasions, disagreed. Disassociating himself from Dr. Shoenfeld's "psychoanalytic" approach, Dr. Douglas persisted in his opinion that immediate institutionalization would be beneficial.[2] Disparaging the drastic consequences cited by Dr. Shoenfeld, Dr. Douglas asserted that the appellant would respond well and promptly to both pharmacological and shock treatment. Relying on these assurances, the court signed the order appealed from

and suggested that Klein be confined in the Medical Center of the Bureau of Prisons, located at Springfield, Missouri.

■ Despite the government's argument to the contrary, we find the order of commitment clearly appealable. Higgins v. United States, 205 F.2d 650 (9th Cir. 1953). In view of the dire consequences predicted as a result of Klein's institutionalization and the indefinite period of his commitment, we feel that appellant is plainly entitled to review of the judgment at this juncture.

■ Although recognizing the discretion afforded the District Court by § 4246, we feel that the record does not furnish sufficient grounds for commitment. There is no issue here as to Klein's mental disorder; the only controversy concerns treatment. This is not a case in which a defendant is charged with malingering or suddenly finds himself incompetent for trial in the aftermath of an indictment; Klein, to the contrary, has been treated for his ailment all of his adult life. Accordingly, where a defendant such as Klein is receiving extensive psychiatric care and there is no question as to the integrity and high professional competence of his personal psychiatrist, we do not consider 18 U.S.C. § 4246 as intended to compel the District Court to determine which of two equally reputable methods of psychiatric treatment would prove most efficacious in a particular case.[3]

We understand and sympathize with the conscientious efforts of the court below, so clearly reflected in the record, to find a solution to the problems which flowed from appellant's serious mental and physical difficulties. Although the indictment was more than a year old,

2. While not stating his opinion in terms as vigorous as those employed by Dr. Douglas, Dr. Francis J. Hamilton, the other psychiatrist to examine Klein for the government, had earlier expressed his belief in the values of hospitalization. The government's treatment evidence came largely from Dr. Douglas, and Dr. Hamilton did not testify at the final hearing.

3. We note, moreover, that the court could not be assured that the Medical Center in Springfield, to which Klein was committed, would follow the course of treatment recommended by Dr. Douglas and apparently accepted by the court. Good medical practice would require that the Medical Center conduct their own "work-up" of the case, and form an independent appraisal of the proper treatment.

there had been no arraignment. Despite four competency hearings and extensive psychiatric examinations, the date at which the appellant would be sufficiently competent to plead to the indictment was still unforeseeable. As a result, we can understand the sense of frustration which led the judge to search for a treatment for Klein's psychosis which would promise more immediate and tangible benefits and accordingly accelerate the date of trial.[4]

Mental disorders being what they are, it is not surprising that eminent psychiatrists differ as to methods of treatment. Here, Dr. Shoenfeld believed that Klein would respond to a psychoanalytic form of therapy; Dr. Douglas, by his own testimony, favored a more physiological approach.[5] Courts of law, unschooled in the intricacies of what may be the most perplexing of medical sciences, are ill-equipped to choose among such divergent but responsible views. In a case such as this, where a man's life may literally hang in the balance, a judge ought not undertake the hazardous venture of changing the course of psychiatric treatment without, at the least, a much fuller hearing and a far greater preponderance of expert testimony than existed here.

Once more we emphasize that we are not faced with the determination commonly required by the statute as to whether a defendant is incompetent to stand trial; all agree that he is. Rather, the trial judge was asked to determine which of several recognized methods of therapy would be most beneficial, or to make a judgment as to methods of treatment in a field of medicine renowned for its responsible differences of opinion.

The court felt called upon to resolve its dilemma by prying the appellant away from a course of treatment which had enabled him, during his periods of remission, to conduct a business and maintain social intercourse without the necessity of institutionalization. With the possibility of disaster lurking in the background and with a new form of treatment and its effectiveness here an unknown quantity, we do not consider a determination whether the appellant should now be committed to a distant and unfamiliar institution to be a decision which courts should be called upon to render.

We have already indicated our realization that vexing problems were presented to the district judge to resolve. However, the condition which temporarily prevents the appellant from conferring with counsel in order to prepare his defense is according to medical testimony subject to change. His present inabilities should not create a situation tantamount to dismissal of the indictment. The indictment remains outstanding and inquiry should be made from time to time as to appellant's condition. Perhaps it would be most helpful to take advantage of the flexibility afforded by informal conferences in which all interested parties—government, defense, psychiatrists and court—might together seek the proper road to their common objective, the amelioration of Klein's condition. He is not at all unlikely that such informal discussions, conducted with intelligence and compassion, could result in a solution acceptable to all concerned.

The judgment is reversed, without prejudice to further proceedings.

4. We feel it significant that the District Judge himself expressed uneasiness over commitment to an institution in Springfield, Missouri, over 1,000 miles from appellant's home and family.

5. While Dr. Douglas did assert that proper dosages of medication could lift appellant from the depths of a depression, nowhere in the record is it claimed that

Klein's psychosis may be "cured." As we understand the situation, the course of treatment urged by the government is at best intended to induce a prolonged period of remission during which Klein, though still a manic-depressive, could intelligently plead to and defend the charges against him.