**UNITED STATES of America**

v.

**George H. HOCK, Jr., Defendant.**

No. 63-CR-429.

United States District Court
E. D. New York.

Dec. 27, 1963.

———◆———

Joseph P. Hoey, U. S. Atty., by Donald F. McCaffrey, Asst. U. S. Atty., for United States.

Sidney Liss, Jamaica, N. Y., for defendant.

RAYFIEL, District Judge.

On October 3, 1963 a second superseding indictment was filed against the above-named defendant. It consisted of nine counts, and charged him with acts violative of Sections 1708, 495 and 2 of Title 18, United States Code. He was arraigned thereunder on October 24, 1963 and entered a plea of "not guilty on the grounds of insanity". On December 16, 1963 a hearing was held under Section 4244 of Title 18, supra, for the purpose of obtaining evidence respecting the defendant's present mental condition. Several qualified psychiatrists testified and documentary evidence was introduced at the hearing. The facts follow.

Late in March, 1963 Judge Bruchhausen made an order committing the defendant (Hock) to the Kings County Hospital for examination as to his mental condition. On April 1, after two interviews with Hock, each lasting about half an hour, Dr. Emil G. Winkler, a qualified psychiatrist attached to said hospital, made his report thereon to this Court wherein he stated, *inter alia*, that on the occasion of both interviews Hock was "unable to discuss his charge in a reasonable manner," and diagnosed his condition as "Schizophrenic Reaction—Mixed Type." The report recommended that the patient (Hock) be "certified to a state hospital for treatment of his mental condition."

On May 7, pursuant to an order of certification of the Supreme Court of the State of New York, he was admitted to Creedmoor State Hospital. His case history, obtained on admission, showed that he had been confined in Kings Park State Hospital from August, 1956 to March, 1957, and that in January, 1961, he had applied for and obtained employment in Creedmoor as an attendant, resigning after some three months. On May 8, after a preliminary interview and examination, his condition was diagnosed as "Schizophrenia, Mixed Type." On May 14 his case was reviewed and the diagnosis changed to "Schizophrenia, paranoid type".

On June 21, after his transfer from one facility at Creedmoor to another, he was again interviewed by a psychiatrist who reported that Hock "related in full his delusional material". The same psychiatrist interviewed him again on July

3. His report thereon states, among other things, that on June 22, the day following his previous interview, Hock had said that he wishes to retract "all ridiculous material" which he had given the psychiatrists on the preceding day. He apologized for his deceit and explained that he had consistently faked mental illness when at the observation ward at Kings County Hospital in order to avoid the penitentiary. He stated further that he had borrowed his delusional ideas from a textbook on psychiatry. Dr. Troiano, the author of the report, found that while Hock was entering a phase of remission he could be considered still clinically psychotic and in need of further hospitalization "in order to secure as full and permanent remission as possible".

Further psychological tests of Hock were made on July 8 and 9, resulting in a change of diagnosis to "Schizophrenia —Undiff. Type". On July 17 he was presented to a staff conference of psychiatrists at Creedmoor, presided over by Dr. A. S. Impastato. The report of that interview and examination states that "the patient is in excellent contact. Verbal productions are coherent and goal directed. His mood was one of moderate anxiety. Patient releates (sic) prior that to his hospitalization at Kings Park he was told by fellow inmates that if he faked insanity he could be released from federal prison. He claims that he made up the symptoms as he went along, noting the examining physician's reactions. Prior to this present admission he claims that he read a psychiatric text book concerning various mental illnesses, studied several case histories of Paranoid Schizophrenia, so that he could imitate the various symptoms. He states that he told various members of his family to corroborate his feigned mental illness. Patient denies hallucinations, delusions and ideas of reference. He states that he would prefer at present to serve a prison term rather than remain in a mental hospital. The psychological report which was made while the patient was trying to give the impression of sanity, reveals consistant (sic) symptomatology suggestive of a basic Schizophrenic process. The members of the Staff at present felt that the patient was somewhat immature and basically two diagnosis (sic) were offered for consideration; one that he was (sic) PSYCHOSIS WITH PSYCHOPATHIC PERSONALITY, *in good remission;* and the other being SCHIZOPHRENIA PSEUDO-PSYCHOPATHIC TYPE. It was the general consensus that we were dealing with a Schizophrenic person who used psychopathic methods in dealing with his environment. For that reason the diagnosis is being changed to SCHIZOPHRENIA, PSEUDO-PSY-CHOPATHIC TYPE. *It was also the unanimous opinion that the patient's mental condition is such that he is competent to understand the nature of the charges and is able to confer with council (sic) and assist in his defense.* The patient may be DISCHARGED INTO THE CUSTODY OF THE U.S. MARSHALLS (Sic). CONDITION MUCH IMPROVED." (Emphasis supplied).

On July 22 a report made by Dr. Troiano for presentation to a Special Release Committee recommended Hock's outright discharge, and stated further that "[T]he staff held the *unanimous opinion* that the patient's mental condition had much improved and that he was at present competent to understand the nature of the charges and assist in his defense." (Emphasis supplied).

On July 23 a Special Release Committee of three psychiatrists recommended that Hock be discharged *"in view of the patient's state of remission and his ability to understand the charges against him and to confer with counsel for his defense * * *."* (Emphasis supplied). On review that recommendation was approved, and Hock was discharged to the custody of the United States Marshal on July 24 with the final diagnosis of "Schizophrenia, Pseudo-Psychopathic Type".

On September 16, prior to setting a date for the trial of the aforementioned charges against him, Hock, pursuant to

Section 4244, supra, was committed to Bellevue Hospital for a mental examination, and on September 18, after appropriate tests and interviews, Drs. Jordan H. Lachman and Richard M. Childs, qualified psychiatrists attached to that institution, made the following report of their findings:

*"PSYCHIATRIC EXAMINATION* This patient presents a well-groomed tidy appearance. His manner was friendly and cooperative. He responded readily to questions in an alert fashion. His affect was only slightly diminished from that of normal. He gave a relevant, coherent and concise account of his previous hospitalizations. This included ten months at Kings Park in 1956 and four months at Creedmoor. Although he admitted hallucinations at one time, he states he has not had such phenomena over a period of at least a year. He seems to understand readily the circumstances which now face him. He related with some candidness a pattern of delinquency in which he broke into mail boxes. He stated that this was his only crime. Intelligence was estimated to be within the normal range.

*"PHYSICAL EXAMINATION* Within normal limits.

*"Summary* This patient, with a history of what were probably psychotic breaks in the past, is now in good contact with reality. The pattern of repeated breaking into mailboxes suggests a neurotically determined acting-out. There are no hallucinations or delusions.

*"IMPRESSION*: Personality Pattern Disorder with Sociopathic and Neurotic Features.

"He is capable of understanding a trial and of assisting counsel in his own defense."

All of the aforementioned reports were received in evidence at the hearing.

Dr. Lachman testified at the hearing, supporting the September 18 report of Bellevue Hospital hereinabove referred to, and expressing the opinion that Hock presently understands and appreciates the nature of the proceeding against him and is able to assist his counsel in his defense.

Dr. Hilda Mosse, a qualified psychiatrist, called in behalf of the defendant, stated that she had interviewed and examined Hock, and believes that he is suffering from Schizophrenia—Paranoid Type, that his condition is progressive in character, and without remission or subsidence.

Dr. Winkler, also called by the defendant, agreed in large part with Dr. Mosse, but conceded that Hock's condition was capable of remission.

Drs. Lachman, McKnight, LaBurt, Troiano, Impastato, Wald and Wallach, all of the Creedmoor staff, and all qualified psychiatrists, and Drs. Lackman and Childs of the Bellevue staff, likewise qualified psychiatrists, disagree with Dr. Mosse's opinion that there can be no remission of the condition from which Hock suffered. They all agree that there has been a remission of his mental condition *and that he now understands the nature of the proceedings against him and is capable of consulting with his attorney in his defense.* The Court of Appeals of this Circuit, in United States v. Klein, 2 Cir., 1963, 325 F.2d 283, said: "Mental disorders being what they are, it is not surprising that eminent psychiatrists differ as to methods of treatment." That may also be said respecting their diagnoses. Without questioning their sincerity it is probably true that in courtroom proceedings involving the determination of mental competence divergent psychiatric opinions are the rule rather than the exception, thereby posing what the Court, in United States v. Klein, supra, characterized as "vexing problems" to those unschooled in the profession.

On the basis of the testimonial and documentary evidence introduced at the hearing it is my considered opinion, and I accordingly find, applying the test sug-

gested in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824, that the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and that he has a rational as well as factual understanding of the proceedings against him."

Settle order on notice.